|   |   |
|---|---|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

TIMOTHY MORGRET, individually and on behalf of others similarly situated,

    Plaintiffs,

v.

APPLUS TECHNOLOGIES, INC.; VALLEY INDUSTRIAL X-RAY AND INSPECTION SERVICES, INC., and DOES 1 through 10,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: 1:13-cv-01801-JLT

ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT
(Doc. 43)

ORDER VACATING HEARING ON MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

Plaintiff Timothy Morgret requests preliminary approval of a class settlement reached with Defendant Valley Industrial X-Ray and Inspection Services, Inc. (Doc. 43.) Plaintiff seeks: (1) the conditional certification of a settlement class; (2) preliminary approval of the settlement; (3) appointment of Plaintiff as the class representative; (4) appointment of Alexander Dychter and Walter Haines as Class Counsel; (5) approval of the proposed class notice and related materials; (6) appointment of Phoenix Settlement Administrators as the Claims Administrator; (7) approval of the Settlement distribution plan; and (8) scheduling for final approval of the settlement. (*See* Doc. 43-2.) Defendant does not oppose the motion for preliminary approval of the class settlement. (Doc. 44.)

The Court has considered the proposed settlement between the parties, and the proposed Notice and related forms. Because the matters are set forth sufficiently in the moving papers and supporting

documents, the hearing on the motion is **VACATED**. For the following reasons, Plaintiff's motion for preliminary approval of class settlement is **GRANTED**.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiff initiated this action by filing a complaint against Valley Industrial X-Ray and Inspection Services ("VIXR").[1] (Doc. 1.) Plaintiff is a former technician and assistant technician for VIXR, where he performed industrial inspection services utilizing x-ray imaging technology. (Doc. 23 at 3.) He alleges VIXR is liable for violations of California Labor laws for failure to pay its technicians and assistant technicians minimum and overtime wages, failure to provide meal periods, failure to provide accurate wage statements, and failure to pay all wages owed upon termination. (Doc. 23 at 2.) Further, Plaintiff alleges VIXR is liable for violations of California's unfair competition laws. (*Id.*)

Defendant filed a Notice of Related Case, noting the claims in *Moore v. VIXR* (Case No. 1:13-cv-01875-JLT) were similar to those presented by Plaintiff. The Court consolidated *Moore* with this action, finding both plaintiffs sought to represent classes of VIXR's current and former employees, and the claims presented by Morgret "encompass those claims raised in the *Moore* matter." (Doc. 31 at 2.) However, Moore dismissed his claims on September 22, 2014. (Docs. 33-34.) Thus, only the claims stated by Timothy Morgret, individually and on behalf of others, remain against VIXR.

Plaintiff and VIXR requested that the Court stay the action pending mediation. (Doc. 35.) On January 21, 2015, the parties engaged in mediation with Edward A. Infante. (Doc. 39.) The parties accepted the mediator's proposal, and Plaintiff filed the motion for preliminary approval of class settlement now pending before the Court on February 13, 2015. (Doc. 43.)

## THE PROPOSED SETTLEMENT

Pursuant to the proposed settlement ("the Settlement"), the parties agree to a gross settlement amount totaling $2,500,000.00. (Doc. 43-1 at 12, Settlement § 1.17.) Defendant agrees to fund the Settlement for a class including "all individuals who are or previously were employed by VIXR in the State of California as Technicians or Assistant Technologies at any time from November 6, 2009, through January 21, 2015." (*Id.* at 17, Settlement § 3.1.) Within three business days of the Court's

---

[1] Plaintiff's complaint also stated claims against Applus Technologies, Inc., which was dismissed as a defendant on November 21, 2013. (Doc. 9.)

order granting final approval of the Settlement, Defendant will "provide the Claims Administrator with sufficient funds via wire transfer to pay the Class Settlement Amount and sufficient funds for the employer's share of payroll taxes." (*Id.* at 22, Settlement § 6.3.)

**I.     Payment Terms**

The settlement fund will cover payments to class members with additional compensation to the Class Representative. (Doc. 43-1 at 17-18, Settlement § 4.2.) In addition, the Settlement provides for payments to Class Counsel for attorneys' fees and expenses, to the Settlement Administrator, and the California Labor & Workforce Development Agency. (*Id.*) Specifically, the settlement provides for the following payments from the gross settlement amount:

- The Class Representative will receive an incentive award up to $10,000;
- Class Counsel will receive no more than 25% of the gross settlement amount for fees, and $20,000 for expenses;
- The California Labor and Workforce Development Agency shall receive $7,500 from the award pursuant to PAGA; and
- The Claims Administrator will receive approximately $15,000 for fees and expenses.

(*Id.* at 18-20, Settlement § 4.2.) After these payments are made, the remaining funds ("Net Settlement Amount") will be distributed as settlement shares to Class Members. (*Id.* at 13, Settlement § 1.19.)

Class members are not required to submit a claim form to receive a share from the Net Settlement Amount. (Doc. 256-1 at 5; Doc. 259-1 at 12-13, Settlement § III.C.) Class members' shares will be determined "by multiplying the Net Settlement Amount by a fraction, the numerator of which is the individual class member's total number of eligible workweeks, and the denominator of which is the total of all eligible workweeks for all members of the Settlement Class during the Settlement Class Period." (Doc. 43-1 at 18, Settlement § 4.2.1.2.) Although the exact amount class members receive depends upon the number of workweeks they were employed by VIXR, the average recovery per class member will be a minimum of $3,200. (Doc. 43 at 10, citing Dychter Decl. ¶ 7.) The entire settlement fund will be distributed, but if any checks are not cashed, that money will be distributed to an identified *cy pres* beneficiary. (Doc. 43-1 at 20, Settlement §4.2.9; Doc. 14-1 at 13-14).

## II. Releases

The Settlement provides that Plaintiffs and Class Members, other than those who elect to participate in the Settlement, shall release VIXR from the claims arising in the class period at the time final judgment is entered. Specifically, the release for class members includes:

> [A]ny and all claims, rights, penalties, demands, damages, debts, accounts, duties, costs (other than those costs required to be paid pursuant to this Settlement Agreement), liens, charges, complaints, causes of action, obligations, liabilities, or causes of action of any nature or description, including any such claims, whether known or unknown, that were alleged in the Class Action Complaint or which could have been alleged based upon the facts set forth in the First Amended Class Action Complaint filed on April 17, 2014 . . . including but not limited to claims under California Labor Code sections 201, 202, 203, 204, 218, 218.5, 218.6, 226, 226.7, 510, 512, 558, 1194, 1197, 2698 et seq., as well as the applicable California Industrial Welfare Commission Wage Order, Business and Professions Code sections 17200-17208 et seq., and Section 7 of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. section 207. The Releasing Settlement Class Members will be deemed to have specifically acknowledged that this Release reflects a compromise of disputed claims.

(Doc. 43-1 at 25, Settlement § 7.1.)

## III. Objections and Opt-Out Procedure

The Notice of Proposed Settlement ("the Notice") explains the claims that are released as part of the Settlement. (Doc. 43-1 at 36, 39.) The Notice explains the procedures to object to the settlement, or elect not to participate in the Settlement. (*Id.* at 38.) Any class member who wishes may file objections or elect not to participate in the Settlement within 45 days of receiving the Notice. (Doc. 43-1 at 12, Settlement § 1.8.)

## IV. The Cy Pres Beneficiaries

Since many class action settlements result in unclaimed funds, parties should have a plan for distributing unclaimed funds. *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1305 (9th Cir. 1990). The options for such distribution include cy pres distribution, escheat to the government, and reversion to the defendants. *Id.*, 904 F.2d at 1307. Here, the parties propose that Greater Bakersfield Legal Assistance be the designated cy pres recipient. (Doc. 43-1 at 20, Settlement § 4.2.9.)

The Ninth Circuit has determined any proposed cy pres recipient should be "tethered to the nature of the lawsuit and the interest of the silent class members." *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1039 (9th Cir. 2011). In other words, the Ninth Circuit "require[s] that there be a driving nexus

between the plaintiff class and the cy pres beneficiaries." *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012) (citing *Nachshin*, 663 F.3d at 1038). Without such tethering, the distribution of funds "may create the appearance of impropriety" by catering "to the whims and self interests of the parties, their counsel, or the court." *Nachshin*, 663 F.3d at 1038. Thus, a cy pres award should not benefit a group that is "too remote from the plaintiff class." *Six Mexican Workers*, 904 F.2d at 1308.

In identifying a cy pres beneficiary, the Ninth Circuit directs courts to consider whether awards to the beneficiary "(1) address the objectives of the underlying statutes, (2) target the plaintiff class, or (3) provide reasonable certainty that any member will be benefitted." *Nachshin*, 663 F.3d at 1040. Further, the Court must consider whether the cy pres distribution is appropriate given the "size and geographic diversity" of the class members. *Id.* at 1040-41 (citing, e.g., *In re Airline Ticket Comm'n Antitrust Litig.*, 307 F.3d 679, 683 (8th Cir. 2002); *Houck on Behalf of U.S. v. Folding Carton Admin. Comm.*, 881 F.2d 494, 502 (7th Cir. 1989)). Here, the parties have not provided information to support a determination that Greater Bakersfield Legal Assistance is an appropriate cy pres beneficiary.

Nevertheless, the Ninth Circuit has determined also that issues related to the identity of a cy pres beneficiary are not generally ripe until there are funds that remain unclaimed. *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) (finding cy pres distribution "becomes ripe only if entire settlement fund is not distributed to class members" and declining to determine propriety of cy pres at that time). The Court explained that where a cy pres distribution is contingent on the outcome of the claims process for a cash distribution, issues regarding the identification of recipients "will not be ripe until it is determined that available cash remains in th[e] fund after the claims process has concluded." *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012). Clearly, at this time, there is no way to know whether there will be funds remaining and, therefore, the Court declines to determine whether Greater Bakersfield Legal Assistance is an appropriate cy pres beneficiary.[2]

## PRELIMINARY APPROVAL OF A CLASS SETTLEMENT

### I. Legal Standard

When parties settle the action prior to class certification, the Court has an obligation to "peruse

---

[2] In the motion for final approval, Plaintiff SHALL provide sufficient information on this topic.

the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). Preliminary approval of a class settlement is generally a two-step process. First, the Court must assess whether a class exists. *Id.* (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). Second, the Court must "determine whether the proposed settlement is fundamentally fair, adequate, and reasonable." *Id.* (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 2998)). The decision to approve or reject a settlement is within the Court's discretion. *Hanlon*, 150 F.3d at 1026.

## II.     Conditional Certification of a Settlement Class

Class certification is governed by Rule 23 of the Federal Rules of Civil Procedure, which provides that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all." Fed. R. Civ. P. 23(a). Under the terms of the Settlement, the proposed class is comprised of "all individuals who are or previously were employed by VIXR in the State of California as a Technician or Assistant Technician at any time since November 6, 2009 through January 21, 2015." (Doc. 43-1 at 12, Settlement § 1.10.) Here, Plaintiff seeks conditional approval of the settlement class. (Doc. 43 at 10.) Pursuant to Rule 23, the Court may "make a conditional determination of whether an action should be maintained as a class action, subject to final approval at a later date." *Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 466 (E.D. Pa. 2000) (citations omitted).

Parties seeking class certification bear the burden of demonstrating the elements of Rule 23(a) are satisfied, and "must affirmatively demonstrate . . . compliance with the Rule." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011); *Doninger v. Pacific Northwest Bell, Inc.*, 563 F.2d 1304, 1308 (9th Cir. 1977). If an action meets the prerequisites of Rule 23(a), the Court must consider whether the class is maintainable under one or more of the three alternatives set forth in Rule 23(b). *Narouz v. Charter Communs., LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010).

### A.     Rule 23(a) Requirements

The prerequisites of Rule 23(a) "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *General Telephone Co. of the Southwest. v. Falcon*, 457 U.S. 147, 155-56 (1982). Certification of a class is proper if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the

representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These prerequisites are generally referred to as numerosity, commonality, typicality, and adequacy of representation. *Falcon*, 457 U.S. at 156.

### 1. Numerosity

A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). This requires the Court to consider "specific facts of each case and imposes no absolute limitations." *General Telephone Co. v. EEOC*, 446 U.S. 318, 330 (1980). Although there is not a specific numerical threshold, joining more than one hundred plaintiffs is impracticable. *See Immigrant Assistance Project of Los Angeles Cnt. Fed'n of Labor v. INS*, 306 F.3d 842, 869 (9th Cir. 2002) ("find[ing] the numerosity requirement . . . satisfied solely on the basis of the number of ascertained class members . . . and listing thirteen cases in which courts certified classes with fewer than 100 members"). Here, Plaintiff reports there are "approximately 572 individuals in the Settlement Class." (Doc. 43 at 13, emphasis omitted.) Therefore, the numerosity requirement is satisfied.

### 2. Commonality

Rule 23(a) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality "does not mean merely that [class members] have all suffered a violation of the same pro-vision of law," but "claims must depend upon a common contention." *Wal-Mart Stores*, 131 S. Ct. at 2551. In this case, Plaintiff asserts "there are several questions of fact or law common to all members of the Settlement Class that may be answered on a class-wide basis," including:

> (1) did VIXR fail to pay all minimum wages for all hours worked?; (2) did VIXR fail to pay overtime wages for all overtime hours worked?; (3) did VIXR fail to provide duty-free 30-minute meal periods on all shifts greater than five hours in length?; (4) did VIXR fail to provide accurate itemized wage statements?; (5) did VIXR fail to pay all wages owed upon termination of employment?; and, (6) was VIXR's failure to pay all owed wages to terminated employees "willful" as required for imposition of penalty wages under California Labor Code Section 203?

(Doc. 43 at 14, citing Dychter Decl. ¶ 10.) The parties agree the commonality requirement is satisfied.

### 3. Typicality

This requirement demands that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The standards under this rule are

permissive, and a claim or defense is not required to be identical, but rather "reasonably coextensive" with those of the absent class members. *Hanlon*, 150 F.3d at 1020. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks and citation omitted). Here, all class members were subject to the same policies and practices. (*See* Doc. 43 at 14-15.) Plaintiff asserts the conduct was "not unique to Plaintiff but was an alleged practice common to all class members -- the alleged failure to pay all wages owed is based upon the exclusion of certain work activities (i.e. certain preparatory activities; driving time within the Kern County; certain concluding activities; mandatory meeting attendance) from hours worked, and the failure to receive duty-free meal breaks is based on the scheduling of employees and the nature of work in relation to required work duties." (*Id.*) Because Plaintiff and the class members have the same injurie, the typicality requirement is satisfied.

### 4. Fair and Adequate Representation

Absentee class members must be adequately represented for judgment to be binding upon them. *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940). This prerequisite is satisfied if the representative party "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "[R]esolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000) (citing *Hanlon*, 150 F.3d at 1020). Here, the adequacy requirements are met by Plaintiff and the proposed class counsel, Alexander Dychter and Walter Haines.

Proposed Class Counsel are experienced in litigating wage and hour class action cases and in serving as class counsel. (*See* Doc. 43 at 2, Dychter Decl. ¶¶ 2-3.) There are no known personal affiliations or familial relationships between the plaintiff and proposed class counsel. Accordingly, it appears Class Counsel satisfy the adequacy requirement. Further, the interest of the named Plaintiffs is aligned with those of the class—to maximize their recovery. Accordingly, for settlement purposes only, the Court finds the named plaintiff is a suitable class representative.

### B. Certification of a Class under Rule 23(b)(3)

As noted above, once the requirements of Rule 23(a) are satisfied, a class may only be certified if it is maintainable under Rule 23(b). Fed. R. Civ. P. 23(b); *see also Narouz*, 591 F.3d at 1266. Plaintiff asserts certification of the Settlement Class is appropriate under Rule 23(b)(3), which requires the Court to find "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and that "a class action is superior to other available methods for fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). These requirements are generally called the "predominance" and "superiority" requirements. *See Hanlon*, 150 F.3d at 1022-23; *see also Wal-Mart Stores*, 131 S. Ct. at 2559 ("(b)(3) requires the judge to make findings about predominance and superiority before allowing the class").

Plaintiff contends that the predominance requirement is satisfied because "all the liability issues in this case can be determined based on common evidence." (Doc. 43 at 16.) Further, Plaintiff asserts the superiority requirement is met because there are approximately 572 class members who "have no particular interest in individually controlling the prosecution of separate actions," and certification of the Settlement Class "provides the most efficient mechanism for resolving all the claims of the class members in this case." (*Id.* at 18.) Thus, the Court finds the proposed settlement class is maintainable under Rule 23(b)(3).

### III. Evaluation of the Settlement Terms

Settlement of a class action requires approval of the Court, which may be granted "only after a hearing and on finding that [the settlement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Approval is required to ensure settlement is consistent with Plaintiff's fiduciary obligations to the class. *See Ficalora v. Lockheed Cal. Co.*, 751 F.2d 995, 996 (9th Cir. 1985). The Ninth Circuit has set forth several factors to determine whether a settlement agreement meets these standards, including:

> the strength of plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant;[3] and the reaction of the class members to the proposed settlement.

---

[3] Because there is not a government participant in this action—only a government beneficiary of the settlement—this factor does not weigh in the Court's analysis.

*Staton*, 327 F.3d at 959 (citation omitted). Further, a court should consider whether settlement is "the product of collusion among the negotiating parties." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 458 (citing *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1290 (9th Cir. 1992)). Reviewing the settlement terms, "[t]he court need not reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute." *Class Plaintiffs*, 955 F.2d at 1291(internal quotation marks and citation omitted).

### A.     Strength of Plaintiffs' Case

In this action, there are several disputed claims the fact-finder would be required to determine. It appears the parties have conducted thorough investigations and discovery allowing them to assess the strengths and weaknesses of the case. (*See* Doc. 43-1 at 16, Settlement §§ 2.2, 2.3.) Accordingly, this factor weights in favor of preliminary approval of the Settlement

### B.     Risks, Expenses, Complexity, and Likely Duration of Further Litigation

Approval of settlement is "preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004). If the settlement were to be rejected, the parties would have to engage in further litigation. The time and expense of continued litigation could outweigh any additional recovery. Plaintiff asserts:

> Plaintiff faced a significant risk that he would not prevail on a contested motion for class certification. [Citation.] Plaintiff likewise faced a significant risk that he would not prevail on the merits of any of his claims at trial. [Citation.] VIXR asserted defenses to all of Plaintiff's claims. With respect to Plaintiff's claims for unpaid minimum and overtime wages, VIXR maintained that (i) class members were provided with sufficient time on-the-clock to perform the allegedly "off-the-clock" activities alleged in the complaint, (ii) that class members were in fact over-paid for the work class members actually performed based on the company's policies to pay employees for time billed to the customer and not the time actually worked by the employee, and (iii) class members were never restricted from reporting to VIXR that they were performing work that was not being paid. [Citation.] With respect to Plaintiff's claims for meal breaks, VIXR maintained that the class members had varying job duties and work environments and VIXR had absolutely no reason to know or believe that non-exempt employees were failing to receive their meal breaks. Additionally, VIXR maintained that its policies were lawful under California law, that it provided meal periods, and that employees recorded their meal break times evidencing meal breaks being taken on submitted time cards. [Citation.]Thus, in the absence of settlement, there were possible litigation outcomes where class members would have recovered absolutely nothing.

(Doc. 43 at 20, citations omitted.) On the other hand, the proposed settlement provides for immediate recovery for the class members. Given the risks and uncertainties faced by Plaintiff, this factor weighs

in favor of approval of the Settlement.

### C. Amount Offered in Settlement

The Ninth Circuit observed "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice v. Civil Serv. Commission*, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted). Thus, when analyzing the amount offered in settlement, the Court should examine "the complete package taken as a whole," and the amount is "not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators." *Id.*, 688 F.2d at 625, 628.

Here, the proposed gross settlement amount is $2,500,000.00. (Doc. 43-1 at 12, Settlement § 1.17.) Plaintiff asserts, "Based on the information provided by VIXR prior to and at mediation, VIXR faced potential liability of approximately $3,950,000 on Plaintiff's claim for owed minimum and overtime wages, and potential liability of approximately $3,250,000 on Plaintiff's claims for meal period premiums." (Doc. 43 at 19, citing Dychter Decl. ¶ 18.) Therefore, the Settlement "reflects a recovery by Plaintiff equal to approximately 35% of the estimated maximum value of his principal claims for unpaid wages and meal break premiums." (*Id.*) Given the time expended by parties in mediation prior to reaching this agreement and the risks involved in proceeding with litigation, the parties agree that the gross settlement amount reflects a compromise as to all of Plaintiffs' allegations. Accordingly, the Court finds the amount offered supports approval of the Settlement.

### D. Extent of Discovery Completed and Stage of the Proceedings

In the course of litigation, Plaintiff propounded written discovery requests, to which VIXR responded by producing "over 1,200 pages of documents." (Doc. 43 at 9.) In addition, "the parties engaged in a significant informal exchange of raw time data, wage statement data, contact information for a sampling of putative class members, and miscellaneous documents and data." (*Id.*) Given the amount of discovery conducted by the parties, it appears they made informed decisions regarding the merits of their claims and defenses. Consequently, this factor supports preliminary approval of the Settlement.

### E. Experience and Views of Counsel

As addressed above, Plaintiff's counsel are experienced in class action litigation. Based upon

discovery conducted in the matter, "Class Counsel are of the opinion that the Settlement is fair, reasonable, and adequate and is in the best interest of the Class Members in light of all known facts and circumstances, including the risk of significant delay, the defenses asserted by VIXR, class certification risk, trial risk, and appellate risk." (Doc. 43-1 at 16, Settlement § 2.2.)  These opinions are entitled to significant weight, and support approval of the settlement agreement. *See Nat'l Rural Telecomms.*, 221 F.R.D. at 528 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation").

### F.     Reaction of Class Members to the Proposed Settlement

Plaintiff has agreed to the terms of Settlement Agreement.  (Doc. 43-1 at 34.)  However, this factor shall be revisited prior to final approval of the Settlement because Class Members have not yet received notice of the Settlement terms.

### G.     Collusion between Negotiating Parties

The inquiry of collusion addresses the possibility that the settlement agreement is the result of either "overt misconduct by the negotiators" or improper incentives of class members at the expense of others. *Staton*, 327 F.3d at 960.  Plaintiff asserts the Settlement was reached "after extensive formal and informal discovery and after engaging in arms length settlement negotiations at a full-day mediation." (Doc. 43 at 19.)  Further, Plaintiff reports that the Settlement was based upon the mediator's proposal. (*Id.* at 9.)  Thus, it appears the agreement is the product of non-collusive conduct, and this factor weighs in favor of preliminary approval of the Settlement.

### H.     Attorneys' Fees

Class counsel may request attorneys' fees "in amount equal to twenty-five percent (25%) of the Class Settlement Amount," for a total award of $625,000.00. (Doc. 43-1 at 18, Settlement § 4.2.2.)  The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark. *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000).

In general, the party seeking fees bears the burden of establishing that the fees and costs were reasonably necessary to achieve the results obtained. *See Fischer v. SJB-P.D., Inc.,* 214 F.3d 1115, 1119 (9th 2000).  Therefore, a fee applicant **must provide time records documenting the tasks completed and the amount of time spent on the action**. *Hensley v. Eckerhart*, 461 U.S. 424, 424

(1983); *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 945-46 (9th Cir. 2007). Because the percentage of the gross fund is equal to the benchmark identified by the Ninth Circuit, this amount is approved preliminarily. The Court will determine the exact amount of the fee award upon application by Class Counsel for approval of fees.

### I. Class Representative Incentive Award

The Settlement provides that Plaintiff may apply to the District Court for a class representative enhancement up to $10,000, to be paid from the gross settlement amount. (Doc. 43-1 at 18, Settlement § 4.2.1.) Incentive awards for class representatives are not to be given routinely by the Court. In *Staton*, 327 F.3d at 975, the Ninth Circuit explained:

> Indeed, '[i]f class representatives expect routinely to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard." *Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713, 720 (E.D.N.Y. 1989); *see also Women's Comm. for Equal Employment Opportunity v. Nat'l Broad. Co.*, 76 F.R.D. 173, 180 (S.D.N.Y. 1977) ("[W]hen representative plaintiffs make what amounts to a separate peace with defendants, grave problems of collusion are raised.").

In fact, "'excessive payments to named class members can be an indication that the agreement was reached through fraud or collusion.'" *Id.* (citation omitted). In evaluating the incentive award to a class representative, a court should consider all "relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonable fears of workplace retaliation." *Staton*, 327 F.3d at 977.

Here, Plaintiff asserts the incentive award "is justified based on the size of the Settlement Amount, the risk Plaintiff took as a named plaintiff, and the time he devoted to this case, including having his deposition taken." (Doc. 43 at 21.) However, there is no evidence related to the number of hours Plaintiff spent working with Class Counsel on this action, or even an estimate of the number of meetings Plaintiff had with Class Counsel. Nevertheless, given the flexibility for an award *up to* $10,000 to the class representative, preliminary approval of an incentive award is appropriate.[4]

---

[4] Notably, a class representative enhancement of $10,000 in this case appears to be excessive. *Wade v. Minatta Transp. Co.*, 2012 U.S. Dist. LEXIS 12057 (N.D. Cal. Feb. 1, 2012) (finding the class representatives, who reported "they were involved with the case by interacting with counsel, participating in conferences, reviewing documents, and attending the day-long mediation that resulted in the settlement" failed to justify an incentive award of $10,000); *see also Alvarado v.*

13

**APPOINTMENT OF CLAIMS ADMINISTRATOR**

The parties propose that the Court appoint Phoenix Settlement Administrators to serve as the Claims Administrator. (Doc. 43 at 2.) The Settlement explains the Claim Administrator's duties will include: "(i) mailing the Notice to Class Members; (ii) performing an [National Change of Address] search and skip-tracing; (iii) tracking returned Opt-Out Letters and Objections; (iv) notifying the Parties regarding submitted Opt-Out Letters and Objections consistent with th[e] Agreement; (v) issuing payments consistent with th[e] Agreement; and, (vi) issuing any required tax paperwork." (*Id.* at 11-12, Settlement § 1.7.) For executing these responsibilities, Phoenix Settlement Administrators will receive $15,000 from the gross settlement fund. (Doc. 43-1 at 19, Settlement § 4.2.5.)

Based upon the recommendation and request of the parties, Phoenix Settlement Administrators is appointed as the Settlement Administrator.

**APPROVAL OF CLASS NOTICE**

The class notice must satisfy the requirements of the Federal Rules of Civil Procedure, which provides the notice "must clearly and concisely state in plain, easily understood language" the following information:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). A class notice must be "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

**I.     Content of the Notice**

Plaintiff has submitted the drafted "Notice of Proposed Class Action Settlement and Final Settlement Hearing." (Doc. 43-1 at 36-39.) Upon review of the proposed Notice, the Court finds the content is adequate. Plaintiff provides information regarding the background of the action and claims

---

*Nederend*, 2011 U.S. Dist. LEXIS 52793 (E.D. Cal. Jan. 11, 2011) (awarding $7,500 to class representatives); *In re Wells Fargo Loan Processor Overtime Pay Litig.*, 2011 U.S. Dist. LEXIS 84541 (N.D. Cal. Aug. 2, 2011) (approving "incentive awards of $7,500 per class representative as compensation for their involvement in the case for the past five years, including appearing for depositions, assisting with written discovery, and working with Class Counsel to manage the settlement process").

1 asserted. The Notice explains the terms and provisions of the Settlement, including the payments from
2 the gross settlement fund. In addition, the Notice explains the rights and procedures to object to the
3 Settlement, or elect not to participate in the Settlement, and will include the applicable deadlines. (*Id.*)
4 Finally, the Notice will provide an estimate of the Class Member's share, and explains the effect of the
5 judgment and settlement.

6 **II.     Method and Administration of Notice**

7 Within five days of the date of service of this Order, VIXR will give the Claims Administrator
8 data for each class member, including the Class Member's: "1) full name; 2) last known home mailing
9 address; 3) telephone number (if available); 4) e-mail address (if available); 5) Social Security Number;
10 6) dates of employment in a class position; and 7) the applicable number of eligible workweeks for
11 each Settlement Class Member." (Doc. 43-1 at 21, Settlement § 5.1.) Following the receipt of this
12 data, the Claims Administrator will mail the Notice to all Class Members via first class mail. (*Id.*,
13 Settlement § 5.2.) For any Notice returned as undeliverable, the Claims Administrator will forward the
14 mail to an address provided by the United States Postal Service or "employ a more substantive skip-
15 tracing procedure in order to obtain updated address information." (*Id.* at 21-22, Settlement § 5.3.)

16 Class members who elect not to participate in the settlement will have 45 days to opt out of the
17 settlement. (Doc. 43-1 at 22, Settlement § 6.1.) Similarly, Class Members who wish to comment on or
18 object to the Settlement have 45 days to file and serve a statement setting forth the grounds for the
19 comment or objection. (*Id.* at 23-24, Settlement § 6.6.) The written statement must indicate whether
20 the Class Member intends to appear at hearing. (*Id.*) Class Members will not be permitted to make
21 objections at the Final Approval and Fairness Hearing unless they have submitted a timely written
22 objection and notice of intention to appear. (*Id.*)

23 **III.    Required Revisions to the Notice**

24 The Notice must be modified to include information in this Order, including the date of the
25 hearing for Final Approval of Class Settlement, and deadlines filing for opting out of the settlement
26 and filing objections. Further the Notice must be modified to include the name, address and phone
27 number of the Claims Administrator.

28 If Plaintiff intends to issue a Spanish language translation of the Notice, he is advised that this

Court requires a declaration that the Notice was translated by a certified court interpreter, asserting the translation is an accurate translation of the Court-approved English version of the Notice.

## CONCLUSION AND ORDER

Based upon the foregoing, the Court finds the proposed class settlement is fair, adequate, and reasonable. The factors set forth by the Ninth Circuit weigh in favor of preliminary approval of the settlement agreement. Moreover, preliminary approval of a settlement and notice to the proposed class is appropriate "if [1] the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007) (quoting *Manual for Complex Litigation*, Second § 30.44 (1985)). Here, the proposed settlement agreement satisfies this test.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's request for conditional certification of the Settlement Class is **GRANTED**, and the class is defined as follows:

    > All individuals who are or previously were employed by VIXR in the State of California as a Technician or Assistant Technician at any time since November 6, 2009 through January 21, 2015.

2. Preliminary approval of the parties' proposed settlement agreement, as modified by this order, is **GRANTED**;

3. The proposed notice plan, as set forth above, is **APPROVED**;

4. Timothy Morgret is **APPOINTED** the Class Representative for the Settlement Class;

5. Alexander Dychter and Walter Haines are **APPOINTED** Class Counsel;

6. Phoenix Settlement Administrators is **APPOINTED** as the Claims Administrator, with responsibilities pursuant to the terms set forth in the Settlement Agreement;

7. The Class Representative enhancement requests for Plaintiff is **GRANTED** preliminarily up to the amount of $10,000, subject to a petition and review at the Final Approval and Fairness Hearing. Class Members and their counsel may support or oppose this request, if they so desire, at the Final Approval and Fairness Hearing;

8. Class Counsel's request for fees in the amount of 25% of the gross settlement fund and expenses in the amount of $20,000 is **GRANTED** preliminarily, subject to counsel's petition for fees and review at the Final Approval and Fairness Hearing. Class Members and their counsel may support or oppose this request, if they so desire, at the Final Approval and Fairness Hearing;

9. The petition for attorneys' fees and for class representative enhancement fee **SHALL** be filed no later than **May 8, 2015**;

10. Costs of settlement administration shall not exceed $15,000;

11. The proposed Notice is preliminarily **APPROVED**, and the parties **SHALL** file a finalized Notice for the Court's approval no later than **March 13, 2015**;

12. The parties **SHALL** provide the Claims Administrator with the Class Data no later than **March 13, 2015**;

13. The Claims Administrator **SHALL** mail the approved Class Notice no more than **March 23, 2015**;

14. Class Members **SHALL** mail any dispute related to the number of work days to the Claims Administrator later than **May 8, 2015**;

15. A class member who wishes to be excluded from settlement shall postmark an opt-out request no later than **May 8, 2015**;

16. Any objections to or comments on the Settlement Agreement must be filed with the Court and mailed to Class Counsel no later than **May 8, 2015**;

17. A Final Approval and Fairness Hearing is SET for **May 29, 2015**, at 9:00 a.m. at the United States Courthouse located at 510 19th Street, Bakersfield, California. At this hearing, the Court shall determine whether the Settlement should be granted final approval as fair, reasonable, and adequate as to the class members. The Court shall hear all evidence and argument necessary to evaluate the Settlement and other motions and requests, including the class representative enhancement request and motion for attorneys' fees;

18. Class Members may appear at the hearing on **May 29, 2015**, in person or through his or her own attorney, to show cause why this Court should not approve the Settlement Agreement, or to object to the motion for attorneys' fees or class member representative enhancement award.  For comments or objections to be considered at the hearing, the Class Member must file comments with the Clerk of this Court indicating briefly the nature of the Class Member's comments, support, or objection.

19. The Court reserves the right to vacate the Final Approval and Fairness Hearing if no comments or objections are filed with this Court on or before **May 8, 2015**;

20. The Court reserves the right to continue the date of the Final Approval and Fairness Hearing without further notice to class members; and

21. The Court retains jurisdiction to consider all further applications arising from or related to the Settlement Agreement.

IT IS SO ORDERED.

Dated:   **March 5, 2015**                              **/s/ Jennifer L. Thurston**
                                                                    UNITED STATES MAGISTRATE JUDGE