Alexander I. Dychter (State Bar #234526)
**DYCHTER LAW OFFICES, APC**
1010 Second Ave., Suite 1835
San Diego, California 92101
Telephone: (619) 487-0777
Facsimile:  (619) 330-1827
E-Mail:  alex@dychterlaw.com

Walter L. Haines (State Bar #71075)
**United Employees Law Group, PC**
5500 Bolsa Ave., Suite 201
Huntington Beach, California 92649
Telephone: (562) 256-1047
Facsimile:  (562) 256-1006
E-Mail:  admin@uelglaw.com

Attorneys for Plaintiff
TIMOTHY MORGRET

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY MORGRET, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>APPLUS TECHNOLOGIES, INC.; VALLEY INDUSTRIAL X-RAY AND INSPECTION SERVICES, INC., and DOES 1 through 10,<br><br>Defendants. | Case No. 1:13-cv-01801-JLT<br><br>Judge:  Magistrate Jennifer L. Thurston<br><br>**CLASS ACTION**<br><br>**DECLARATION OF ALEXANDER I. DYCHTER IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:        May 29, 2015<br>Time:       9:00 a.m.<br>Ctrm:       Bakersfield Courtroom |

I, Alexander I. Dychter, declare:

1. I am an attorney licensed to practice law in the State of California and the District of Columbia and am admitted to practice before this Court. I am lead counsel for plaintiff Timothy Morgret ("Plaintiff" or "Morgret") in this action against defendant VALLEY INDUSTRIAL X-RAY AND INSPECTION SERVICES, INC. ("Defendant" or "VIXR"). I have personal knowledge of the matters stated herein and if called and sworn as a witness, I could and would competently testify under oath thereto.

2. I graduated from DePaul University College of Law in 2003. Prior to establishing Dychter Law Offices, APC, I worked at the law firm of Cohelan Khoury & Singer. At Cohelan Khoury & Singer my practice was devoted exclusively to class action lawsuits on behalf of employees and I litigated over 25 class actions on behalf of plaintiffs. At Cohelan Khoury & Singer I was lead or co-counsel, or otherwise exercised significant day to day case handling responsibilities in cases resulting in class action judgments or settlements with a cumulative value in excess of $75 million.

3. In April 2009, I left Cohelan Khoury & Singer to open my own law practice under the name Dychter Law Offices, APC. As before, my practice is now devoted almost exclusively to individual and class action lawsuits on behalf of employees. Currently, I am lead counsel or co-counsel on more than ten class action lawsuits that are pending in state or federal court.

4. I have substantial experience in all facets of litigation in state and federal court, including discovery, law and motion, arbitration, mediation, and trial. I am fully capable of adequately and fairly representing Plaintiff and the proposed class in this matter.

5. Pursuant to the Settlement, VIXR is required to pay a total of $2,500,000 on a non-reversionary basis in exchange for a release of class member claims. Under the Settlement, the entirety of the Net Settlement Amount will be distributed to class members who did not request exclusion from the Settlement.

6. To date, **only 1** class member has "opted-out" from the Settlement, and **not a single class member** has "objected" to the Settlement.

7. The material terms of the Settlement are as follows:

- The Settlement Class is comprised of the following:

- All individuals who are or previously were employed by VIXR in the State of California as a Technician or Assistant Technician at any time since November 6, 2009 through January 21, 2015.

- VIXR will pay the Gross Settlement Amount of Two Million Five Hundred Thousand Dollars ($2,500,000) in exchange for a release of class member claims.

- After settlement administration expenses, attorney's costs and fees, an enhancement award, and a payment to the State of California pursuant to the Private Attorney General Act ("PAGA") are deducted from the Gross Settlement Amount, the entirety of the remaining funds (the "Net Settlement Amount") shall automatically be distributed to class members by multiplying the Net Settlement Amount by a fraction, the numerator of which is the individual class member's total number of eligible workweeks, and the denominator of which is the total of all eligible workweeks for all members of the Settlement Class during the Settlement Class Period.

- VIXR will not oppose an application by Plaintiff for an award of costs up to $20,000 or an award of attorney's fees up to $625,000 (25% of the Gross Settlement Amount); and

VIXR will not oppose an application by Plaintiff Morgret for an incentive award up to Ten Thousand Dollars ($10,000).

8. With respect to Plaintiff's owed wages claim and meal period claim, VIXR did in fact maintain time records showing time worked, time billed to customers, and meal periods being taken. There were also inherent problems with proof of damages, as VIXR argued the class members maintained varying job duties at different physical locations and no two day's were identical in nature. Thus, in the absence of settlement, there were possible litigation outcomes where class members would have recovered absolutely nothing.

9. The Settlement reflects recovery by Plaintiff equals to approximately 35% of the estimated value of his claims for unpaid wages and meal period premium payments.

10. Here, a substantial amount of discovery was conducted prior to the parties attending mediation. Defendant produced a substantial amount of documents/data, including but not limited to, time-punch data, wage statement data, a sampling of putative class member contact information, and other relevant information enabling Plaintiff to evaluate the strengths and weaknesses of his claims.

Prior to mediation Plaintiff took a Person Most Knowledgeable Deposition of VIXR and Defendant took the Deposition of Mr. Morgret.  Moreover, prior to mediation, Plaintiff retained the services of a statistician to assist in the analysis of voluminous amount of electronic data in order for Plaintiff to calculate the maximum amount of Defendant's potential liability.  Pursuant to a negotiated pre-mediation process, the parties selected a random sample of employees from the class, and defendant provided a volume of work and payroll records, including time records and GPS data, covering the class period.  Both sides performed a detailed analysis of hours billed, hours worked, hours paid and other relevant issues.  This data formed much of the basis for the settlement negotiations.

11. Having only reached a settlement after a full day of mediation with Judge Infante (*Ret*.) pursuant to a "mediators proposal," there is no dispute that the parties' settlement negotiations were all conducted at arm's length.  In this case, the parties held clear (and strongly opposing) views of the strengths and weaknesses of their cases and, with the assistance of the mediator – a retired federal Magistrate Judge, ultimately reached a fair settlement that required each side to compromise.

12. To date, **only one** class member has requested to "opt-out" from the Settlement and **not a single** class member has "objected" to the Settlement. [1]

> [1] One class member, Mr. Parra, submitted a written workweek count dispute that was mistakenly titled by him as "*Notice of Objection*."  This document **was not** an "*objection*" to the Settlement as contemplated in the Notice Packet or Settlement Agreement.  Pursuant to subsequent discussions with Mr. Parra, the workweek count issue was resolved to Mr. Parras' satisfaction and predicated on a misunderstanding by Mr. Parra as to the actual job titles that were encompassed in the Settlement Class Member definition.  The issue is now fully resolved.

13. Here, VIXR has agreed not to oppose a request by Plaintiff for fees up to the amount of $625,000 which is 25% of the Gross Settlement Amount of $2,500,000.  Plaintiff's request for fees in the amount of $625,000 is authorized by the Settlement [.]

14. For example, Defendant contended that Class Members were paid for all time worked and received meal periods as mandated under the labor code.  There were also inherent problems with proof of damages, as Defendant argued the class members varying job duties at different physical

1  locations. If successful, Defendant's defenses could eliminate or substantially reduce any recovery to
2  the Class. While Plaintiff believes that these defenses could be overcome, Defendant maintains these
3  defenses have merit and therefore present a serious risk to recovery by the Class. If successful, VIXR'
4  defenses could eliminate or substantially reduce any recovery to the Class.

5     15.   At the time of the mediation, the parties were aware that if a resolution could not be
6  reached preparations for class certification would need to resume immediately and a motion for class
7  certification would most likely have been filed within six months.

8     16.   The Settlement was possible only because Class Counsel had been able to convince
9  VIXR that Class Counsel could potentially prevail on the legal issues regarding the wage claim and a
10 failure of VIXR to provide compliant meal breaks which Plaintiff maintains would lead towards
11 achieving class certification for all class members, and overcoming difficulties in proof as to monetary
12 relief.

13    17.   Here, informed arms-length bargaining between experienced counsel for the Class and
14 Defendant was clearly adversarial and arms length as the amount was the result of a full-day mediation
15 before an experienced and well regarded class action mediator and retired federal Magistrate Judge.

16    18.   The requested fee and cost award was a product of arms-length negotiations, and the
17 negotiated amount is justified by Class Counsel's incurred fees, and therefore fairly reflects the
18 marketplace value of the services rendered by Class Counsel in this case.

19    19.   When this case was originally filed it was "inescapably contingent." Further, the result
20 was by no means guaranteed. Effective prosecution of this case was founded upon the risky contingent
21 investment of time and expense.

22    20.   Some of the recent class action awards obtained by Class Counsel herein in similar
23 employment actions bear out the reasonableness of a fee and costs award equivalent to **25%** of the total
24 settlement value:

25    ●On September 23, 2013, in *Hetherington v. Bank of America, N.A.*, (U.S.D.C. Southern District
26    of California, Case No. 3:12-cv-01559-JM), the Hon. Jeffrey T. Miller, awarded Class Counsel a
27    ***25%*** fee award in an overtime class action.

28

1   •On December 13, 2013, in *Lewis v. Safelite Fulfillment, Inc.*, (U.S.D.C. Northern District of

2   California, Case No. cv-11-5512-CRB), the Hon. Charles R. Breyer, awarded Class Counsel a

3   *25%* fee award in an overtime, meal break, and rest period class action.

5   •On August 22, 2014, in *Estrella v. B-PER Electronic, Inc.*, (San Diego Superior Court, Case

6   No. 37-2013-00048951-cu-oe-ctl), the Hon. Joan M. Lewis, awarded Class Counsel a *33%* fee

7   award in an overtime, meal break, and rest period class action.

9   •On October 31, 2014, in *Lopez v. Tire Centers, LLC* (U.S.D.C. Northern District of California,

10  Case No. 3:13-cv-05444-JCS), the Hon. Magistrate Joseph C. Spero, awarded class counsel a

11  *25%* fee award in an overtime, meal break, and rest period class action.

13  21.    Class Counsel expended a combined total of more than **420.5** hours prosecuting this

14  action on behalf of the Class. These hours, when calculated at Class Counsel's customary respective

15  hourly rates, corresponds to a total lodestar of **$236,225**, with additional work still to be performed,

16  including attendance at the final approval hearing on May 29, 2015 in Bakersfield, California,

17  responding to class member inquiries and requests for clarification from the Administrator.

19  •The lodestar as of May 8, 2015 for <u>**DYCHTER LAW OFFICES, APC**</u>, is **$204,050**, which

20  consists of **371 hours** of work performed by Alexander I. Dychter, Esq., at his customary hourly rate

21  of **$550**.

22  •<u>Time spent on this matter is categorically presented as follows</u>:

23  [Initial Client Intake and Background Research on APPLUS RTD & VIXR with

24  Client and Co-Counsel = **18.0**; Document Review, initial disclosures, PAGA Ltr.

25  Mailing = **18.5**; Drafting Discovery (RPD, SROG) receive and review responses, draft

26  Bel Aire notice letter and postcard, etc. = **11.0**; Roundtrip Travel from San Diego to

27  Los Angeles to attend: (1) initial meeting amongst counsel (including prep time and

28  meeting time); (2) Rule 26(f) meeting (including prep time and meeting time); (3)

PMK Deposition of VIXR (including prep time drafting outline for deposition, reviewing and organizing exhibits, taking deposition); Roundtrip Travel to Bakersfield to (1) attend initial case status conference (including file review and prep time)(meeting with client for breakfast); (2) Deposition of Timothy Morgret (including prep time over the phone a week prior deposition, prep time at office to review client file, prep time the evening before depo in Bakersfield and continued discussion over dinner, depo prep in the morning and continued discussion over breakfast) ; review transcripts from Morgret Depo and PMK Depo for possible changes = **82.0**; Mediation, including reviewing substantial amounts of raw data/information produced by Defendant for mediation purposes only including but not limited to, GPS data, billing tickets from VIXR customers, time sheets, pay-stubs , drafting the 20-page mediation brief with 15 exhibits attached thereto, preparing a damage model, consulting with the retained expert statistician, Dr. James Lackritz, Ph.D. on multiple occasions and sending him data/info for review and discussion, reviewing voluminous amount of time cards and pay data from randomly selected class members for purposes of data coding for damage modelling analysis by Plaintiff's counsel; calling randomly selected class members to conduct over a dozen telephonic interviews; drafting memos from conversations with class members; creating template for declarations to receive from class members to be used for mediation and potentially for class certification purposes; multiple discussions with Plaintiff Morgret; multiple conversations with Walter Haines regarding case work-up and overall strategy for mediation; review mediation brief and prepare for mediation strategy;  travel to Santa Monica and attend full-day mediation with Magistrate Judge Infante (Ret.) = **145.0**; Communication with Defense counsel via letter/phone/email, Communication with Mr. Morgret, Communication with Co-Counsel, Communication with class members, Communication with the third-party administrator (Phoenix Settlement Administrators); Communication with Counsel in the *Moore* matter  on multiple occasions; calls from over 25 class members with questions regarding

1  settlement, address updates, etc., follow-up with Administrator and Defense counsel
2  regarding class member inquiries = **29.5**; Drafting various Pleadings (including
3  Complex Complaint; First Amended Complaint; Rule 26(f) statement; Joint Status
4  Conf. Statement; Formal Long-Form Settlement Agreement; Preliminary Approval
5  Motion and Notice Documents; Final Approval Motion Papers; etc. = **67.0**]

7  The hourly rates of Plaintiff's attorneys are commensurate with the rates of similarly
8  experienced class action lawyers in Los Angeles and San Diego and are less than the hourly rates for
9  lawyers with comparable experience set forth in the "*Laffey Matrix*," a guide used by many courts to
10 determine reasonable attorney's fees.  Attached hereto as **Exhibit 1** is a true and correct copy of the
11 most recent *Laffey Matrix*, which I personally downloaded from the website
12 http://www.laffeymatrix.com on May 8, 2015.  Under the current *Laffey Matrix*, the hourly rate for a
13 lawyer with more than 10 years experience (like Plaintiff's lead counsel, Alexander I. Dychter, Esq.)
14 is **$567**.

16 On September 23, 2013, United States District Judge Jeffrey T. Miller granted final approval
17 of a wage and hour class action settlement in the matter of *Crystal E. Hetherington v. Bank of*
18 *America, N.A.* (U.S. Dist. S.D. Cal., Case No. 12-cv-1559-JM) wherein the Court approved Class
19 Counsel's (Alexander I. Dychter) hourly rate of **$500**.  On December 16, 2013, United States District
20 Judge Charles R. Breyer granted final approval of a wage and hour class action settlement in the
21 matter of *Lewis v. Safelite Fulfillment, Inc.* (U.S. Dist. N.D. Cal., Case No. 3:11-cv-05512-CRB)
22 wherein the Court approved Class Counsel's (Alexander I. Dychter) hourly rate of **$500**.  On
23 October 31, 2014, United States Magistrate Judge Joseph C. Spero granted final approval of a wage
24 and hour class action settlement in the matter of *Giovanni Lopez v. Tire Centers, LLC* (U.S. Dist.
25 N.D. Cal., Case No. 3:13-cv-05444-JCS) wherein the Court approved Class Counsel's (Alexander I.
26 Dychter) hourly rate of **$500** and a lodestar multiplier of **2.07**.  On April 16, 2015, the Superior
27 Court of California, County of Orange, Judge Robert J. Moss (Dept. CX-102) granted final approval
28 of a wage and hour class action settlement in the matter of *Sharon Holmes v. A Place for Mom, Inc.*

(Case No. 30-2014-00702051-CU-OE-CXC) wherein the Court approved Class Counsel's (Alexander I. Dychter) hourly rate of **$550** and **33%** of the common fund.

22. As part of the Settlement, the parties agreed that Class Counsel shall be entitled to reimbursement of "costs not to exceed $20,000." Class Counsel requests reimbursement for costs in the amount of **$14,423.82**,[4] which is *less than* the allocation for costs allowed by the Settlement.

[4] The costs total excludes any necessary costs to be incurred by Plaintiff's counsel in attending the Final Approval Hearing on May 29, 2015, in Bakersfield, California.

23. These costs primarily involve the following: filing and service fees (*approx*. *$664*); fees associated with retaining a mediator, the Hon. Edward Infante (*Ret*.) (*approx. $6,775*); fees associated with retaining a statistician, Dr. James R. Lackritz, Ph.D. (*approx. $3,270*); fees associated with taking a PMK Deposition (*approx.* **$1,182**); travel related expenses from San Diego to Los Angeles for the: **(i)** initial case meeting at the office of defense counsel; **(ii)** Rule 26(f) conference at the office of defense counsel; **(iii)** PMK Deposition at the office of defense counsel; **(iv)** mediation at JAMS in Santa Monica, CA; and travel expenses from San Diego to Bakersfield for the **(v)** initial status conference, and **(vi)** deposition of Plaintiff Morgret (*approx. $2,225*); and, also includes amounts paid for document copying/scanning fees, legal research charges, courier delivery charges, and mailings all of which are costs normally billed to and paid by the client.

24. These costs were reasonably incurred in the prosecution of this matter.

25. As part of the Settlement, the parties agreed that Plaintiff Morgret shall be entitled to request an incentive award "of up to $10,000." Plaintiff has requested an enhancement payment in the amount of **$10,000**.

26. Plaintiff should be awarded a reasonable enhancement in this case because he not only achieved an excellent result on behalf of 595 class members, but also subjected himself to intrusive discovery (*including being deposed for a full-day and missing work*), the possibility of having to pay employer costs or attorney's fees, and the threat of blacklisting for suing an employer in future employment endeavors. Moreover, over the last 20 months Plaintiff has communicated with counsel

on countless occasions, assisted counsel with formal written discovery and investigation, and was available via telephone during mediation.

27. Additionally, it is important to note that Plaintiff's incentive award request of $10,000 equals only *.004%* of the Gross Settlement Sum and is only about one thousand dollars ($1,000) more than many individual settlement amounts (*e.g.* **117** settlement class members will be receiving individual settlement awards of over $6,000; **69** settlement class members will be receiving individual settlement awards of over $7,000, and the highest individual settlement award is approximately $8,916). Also, unlike all other settlement class members, Plaintiff Morgret **was required** to execute a General Release with a 1542 waiver in exchange for his request of an incentive award of up to $10,000.

28. VIXR does not oppose the requested enhancement award, which is reasonable based on the size of the settlement and compares favorably with enhancement awards in similar wage and hour class action settlements.

29. As part of the Settlement, the parties agreed that the claims administration costs "shall not exceed $15,000."

30. As part of the Settlement, the parties agreed that any checks issued to claimants be negotiable for 180 days from the date of mailing by the Claims Administrator. (Stipulation at ¶4.2.9). Thereafter, the Claims Administrator shall void any such check and all un-cashed funds that remain in the account monitored by the Claims Administrator shall be sent to the *cy pres* of the Greater Bakersfield Legal Assistance, Inc. (hereinafter "GBLA") (the web-site can be found at: www.GBLA.org) a 501(c)(3) non-profit that offers free legal services in Kern County.

31. Pursuant to **Footnote 2** of the Court Preliminary Approval Order dated March 5, 2015, (*see* ECF #46, Page 5), Class Counsel maintains that the GBLA is a well suited *cy pres* beneficiary for the following reasons. First, the vast majority of the Class Members live in Kern County and the mission statement of the GBLA is to serve this specific geographic area. Second, the GBLA provides free legal clinics in Kern County that focus on **common areas of law** that most people will likely utilize in their lives, such as: (i) health issues; (ii) consumer law; (iii) domestic violence; (iv) guardianship; (v) housing; and various other self-help functions. Third, many Class Members do not

earn enough money to pay for private legal counsel to assist them with many of the basic areas of law that the GBLA provides counsel on at no cost.

32. Alternatively, should this Court determine that the GBLA is not an appropriate *cy pres* beneficiary; the parties will agree to mutually select an alternative *cy pres* beneficiary at the direction of the Court (*see* Stipulation at ¶4.2.9).

## EXHIBITS

1. Attached hereto as **Exhibit 1** is a true and correct copy of the "Laffey Matrix" downloaded on May 8, 2015.

I declare under penalty of perjury under the laws of the United State of America that the foregoing is true and correct and that this Declaration was executed in San Diego, California on May 8, 2015.

/s/ Alexander I. Dychter
Alexander I. Dychter

# EXHIBIT 1

Case 1:13-cv-01801-JLT   Document 49-1   Filed 05/08/15   Page 13 of 13

# LAFFEY MATRIX

|  | Adjustmt Factor** | Paralegal/ Law Clerk | Years Out of Law School * | | | | |
|---|---|---|---|---|---|---|---|
| Year | | | 1-3 | 4-7 | 8-10 | 11-19 | 20 + |
| 6/01/14- 5/31/15 | 1.0235 | $179 | $328 | $402 | $581 | $655 | $789 |
| 6/01/13- 5/31/14 | 1.0244 | $175 | $320 | $393 | $567 | $640 | $771 |
| 6/01/12- 5/31/13 | 1.0258 | $170 | $312 | $383 | $554 | $625 | $753 |
| 6/01/11- 5/31/12 | 1.0352 | $166 | $305 | $374 | $540 | $609 | $734 |
| 6/01/10- 5/31/11 | 1.0337 | $161 | $294 | $361 | $522 | $589 | $709 |
| 6/01/09- 5/31/10 | 1.0220 | $155 | $285 | $349 | $505 | $569 | $686 |
| 6/01/08- 5/31/09 | 1.0399 | $152 | $279 | $342 | $494 | $557 | $671 |
| 6/01/07-5/31/08 | 1.0516 | $146 | $268 | $329 | $475 | $536 | $645 |
| 6/01/06-5/31/07 | 1.0256 | $139 | $255 | $313 | $452 | $509 | $614 |
| 6/1/05-5/31/06 | 1.0427 | $136 | $249 | $305 | $441 | $497 | $598 |
| 6/1/04-5/31/05 | 1.0455 | $130 | $239 | $293 | $423 | $476 | $574 |
| 6/1/03-6/1/04 | 1.0507 | $124 | $228 | $280 | $405 | $456 | $549 |
| 6/1/02-5/31/03 | 1.0727 | $118 | $217 | $267 | $385 | $434 | $522 |
| 6/1/01-5/31/02 | 1.0407 | $110 | $203 | $249 | $359 | $404 | $487 |
| 6/1/00-5/31/01 | 1.0529 | $106 | $195 | $239 | $345 | $388 | $468 |
| 6/1/99-5/31/00 | 1.0491 | $101 | $185 | $227 | $328 | $369 | $444 |
| 6/1/98-5/31/99 | 1.0439 | $96 | $176 | $216 | $312 | $352 | $424 |
| 6/1/97-5/31/98 | 1.0419 | $92 | $169 | $207 | $299 | $337 | $406 |
| 6/1/96-5/31/97 | 1.0396 | $88 | $162 | $198 | $287 | $323 | $389 |
| 6/1/95-5/31/96 | 1.032 | $85 | $155 | $191 | $276 | $311 | $375 |
| 6/1/94-5/31/95 | 1.0237 | $82 | $151 | $185 | $267 | $301 | $363 |

The methodology of calculation and benchmarking for this Updated Laffey Matrix has been approved in a number of cases. See, e.g., McDowell v. District of Columbia, Civ. A. No. 00-594 (RCL), LEXSEE 2001 U.S. Dist. LEXIS 8114 (D.D.C. June 4, 2001); Salazar v. Dist. of Col., 123 F.Supp.2d 8 (D.D.C. 2000).