1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**EASTERN DISTRICT OF CALIFORNIA**

10
11 | TIMOTHY MORGRET, individually and on behalf of others similarly situated,

12 |                  Plaintiffs,

13 |       v.

14

15 | APPLUS TECHNOLOGIES, INC.; VALLEY INDUSTRIAL X-RAY AND INSPECTION SERVICES, INC., and DOES 1 through 10,

16

17 |                  Defendants.

Case No.: 1:13-cv-01801 - JLT

ORDER GRANTING FINAL APPROVAL OF CLASS SETTLEMENT (Doc. 49)

18          Plaintiff Timothy Morgret seeks final approval of a class settlement reached with Defendant

19   Valley Industrial X-Ray and Inspection Services, Inc.  (Doc. 49.)  In addition, Plaintiff seeks an award

20   of attorney's fees and costs from the Settlement fund and a class representative incentive payment.

21   (Doc. 49.)  Defendant does not oppose these requests.  (Doc. 50.)

22          Because Plaintiff carries his burden to demonstrate certification of the Settlement Class is

23   appropriate under Rule 23 of the Federal Rules of Civil Procedure and that the terms of the settlement

24   are fair, reasonable, and adequate, Plaintiffs request for final approval of the Settlement is GRANTED.

25   In addition, Plaintiff's request for attorney fees is **GRANTED** in the amount of $625,000; costs are

26   awarded in the amount of $14,423.82; and Plaintiff's request for an incentive payment is **GRANTED**

27   in the modified amount of $5,000.

28   ///

1

**FACTUAL AND PROCEDURAL HISTORY**

Plaintiff initiated this action by filing a complaint against Valley Industrial X-Ray and Inspection Services ("VIXR").[1]  (Doc. 1.)  Plaintiff is a former technician and assistant technician for VIXR, where he performed industrial inspection services utilizing x-ray imaging technology.  (Doc. 23 at 3.)  He alleges VIXR is liable for violations of California Labor laws for failure to pay its technicians and assistant technicians minimum and overtime wages, failure to provide meal periods, failure to provide accurate wage statements, and failure to pay all wages owed upon termination.  (Doc. 23 at 2.)  Further, Plaintiff alleges VIXR is liable for violations of California's unfair competition laws.  (*Id.*)

Defendant filed a Notice of Related Case, noting the claims in *Moore v. VIXR* (Case No. 1:13-cv-01875-JLT) were similar to those presented by Plaintiff.  The Court consolidated *Moore* with this action, finding both plaintiffs sought to represent classes of VIXR's current and former employees, and the claims presented by Morgret "encompass those claims raised in the *Moore* matter."  (Doc. 31 at 2.)  However, Moore dismissed his claims on September 22, 2014.  (Docs. 33-34.) Thus, only the claims stated by Timothy Morgret, individually and on behalf of others, remain against VIXR.

Plaintiff and VIXR requested that the Court stay the action pending mediation.  (Doc. 35.)  On January 21, 2015, the parties engaged in mediation with Edward A. Infante.  (Doc. 39.)  The parties accepted the mediator's proposal, and Plaintiff requested preliminary approval of the settlement terms.  (Doc. 43.)

On March 5, 2015, the Court granted preliminary approval of the proposed settlement agreement ("the Settlement").  (Doc. 46.)  The Court granted conditional certification of the Settlement Class, defined as: "all individuals who are or previously were employed by VIXR in the State of California as Technicians or Assistant Technologies at any time from November 6, 2009, through January 21, 2015."  (Doc. 43-1 at 17, Settlement § 3.1.)  In addition, Plaintiff was appointed the Class Representative, and authorized to seek an incentive payment up to $10,000 for his representation of the class.  (*Id.* at 16.)  Alexander Dychter and Walter Haines were appointed as Class Counsel, and were authorized to seek "fees in the amount of 25% of the gross settlement fund and expenses in the amount

---

[1] Plaintiff's complaint also stated claims against Applus Technologies, Inc., which was dismissed as a defendant on November 21, 2013. (Doc. 9.)

of $20,000." (*Id.* at 16-17.)  Phoenix Settlement Administrators was appointed the Claims Administrator.  (*Id.* at 16.)  On March 12, 2015, the Court approved the Class Notice that conveyed this information to Class Members.  (Doc. 48.)

On March 20, 2015, the Settlement Administrator mailed the Class Notice to 595 Class Members.  (Doc. 49-3 at 3, Meade Decl. ¶ 17.)  Of the mailed Class Notices, three were returned as undeliverable, but the Settlement Administrator was able to locate current addresses.  (*Id.*, ¶ 8.)  The Settlement Administrator received one "opt-out" request, which represents 0.16% of the Settlement Class.  (*Id.*, ¶¶ 9, 11.)  No objections to the Settlement terms were received by the Settlement Administrator or filed with the Court.[2]

Plaintiff filed the motion now pending before the Court for final approval of the Settlement on May 8, 2015.  (Doc. 49.)  Defendant filed a Notice of Non-Opposition on May 13, 2015.  (Doc. 50.)

## SETTLEMENT TERMS

Pursuant to the Settlement, the parties agree to a gross settlement amount totalling $2,500,000. (Doc. 43-1 at 12, Settlement § 1.17.)  Defendant agreed to fund the Settlement for a class including "all individuals who are or previously were employed by VIXR in the State of California as Technicians or Assistant Technologies at any time from November 6, 2009, through January 21, 2015."  (*Id.* at 17, Settlement § 3.1.)  Within three business days of the Court's order granting final approval of the Settlement, Defendant will "provide the Claims Administrator with sufficient funds via wire transfer to pay the Class Settlement Amount and sufficient funds for the employer's share of payroll taxes."  (*Id.* at 22, Settlement § 6.3.)

### I.      Payment Terms

The settlement fund will cover payments to class members with additional compensation to the Class Representative.  (Doc. 43-1 at 17-18, Settlement § 4.2.)  In addition, the Settlement provides for payments to Class Counsel, the Settlement Administrator, and the California Labor & Workforce

---

[2] Michael Joseph Parra filed a "Notice of Objection" on May 6, 2015.  (Doc. 51 at 1.)  Mr. Parra did not object to the terms of the Settlement, but rather objected to his "estimated share of the net settlement amount."  (*Id.*)  After considering the response filed by the Claims Administrator (Doc. 53), it is apparent that Mr. Parra merely misunderstood the class definitions and how his share was to be calculated.  Thus, to the extent that Parra's objection could be interpreted as an objection to the class settlement, it is **OVERRULED.**

Development Agency.  (*Id.*)  Specifically, the Settlement provides for the following payments from the gross settlement amount:

- The Class Representative will receive an incentive award up to $10,000;

- Class Counsel will receive no more than 25% of the gross settlement amount for fees, and $20,000 for expenses;

- The California Labor and Workforce Development Agency shall receive $7,500 from the award pursuant to PAGA; and

- The Claims Administrator will receive approximately $15,000 for fees and expenses.

(*Id.* at 18-20, Settlement § 4.2.)  After these payments are made, the remaining funds ("Net Settlement Amount") will be distributed as settlement shares to Class Members.  (*Id.* at 13, Settlement § 1.19.)

Class members were not required to submit claim forms to receive a share from the Net Settlement Amount.  (*See* Doc. 43-1 at 18-19.)  Shares were determined "by multiplying the Net Settlement Amount by a fraction, the numerator of which is the individual class member's total number of eligible workweeks, and the denominator of which is the total of all eligible workweeks for all members of the Settlement Class during the Settlement Class Period." (*Id.* at 18, Settlement § 4.2.1.2.) Although the exact amount class members receive depends upon the number of workweeks they were employed by VIXR, the average recovery per class member is $3,068.  (Doc. 49 at 6, citing Meade Decl. ¶ 12.) The entire settlement fund will be distributed, but if any checks are not cashed, that money will be distributed to a *cy pres* beneficiary.  (Doc. 43-1 at 20, Settlement § 4.2.9; Doc. 49 at 21-22.)

## II.      Releases

The Settlement provides that Plaintiff and Class Members, other than those who elect to participate in the Settlement, shall release VIXR from the claims arising in the class period at the time final judgment is entered.  Specifically, the release for class members includes:

> [A]ny and all claims, rights, penalties, demands, damages, debts, accounts, duties, costs (other than those costs required to be paid pursuant to this Settlement Agreement), liens, charges, complaints, causes of action, obligations, liabilities, or causes of action of any nature or description, including any such claims, whether known or unknown, that were alleged in the Class Action Complaint or which could have been alleged based upon the facts set forth in the First Amended Class Action Complaint filed on April 17, 2014 . . . including but not limited to claims under California Labor Code sections 201, 202, 203, 204, 218, 218.5, 218.6, 226, 226.7, 510, 512, 558, 1194, 1197, 2698 et seq., as well as the applicable California Industrial Welfare Commission Wage Order, Business and Professions Code sections 17200-17208 et seq., and Section 7 of

the Fair Labor Standards Act ("FLSA"), 29 U.S.C. section 207.  The Releasing Settlement Class Members will be deemed to have specifically acknowledged that this Release reflects a compromise of disputed claims.

(Doc. 43-1 at 25, Settlement § 7.1.)

### III.    Objections and Opt-Out Procedure

The Class Notice informed the Class Members of the nature of the action, the class definition, the claims and issues to be resolved, and the binding effect of a class judgment.  (Doc. 48; *see also* Doc. 47-1.)  The Class Notice also explained how any class member who wished had an opportunity to object or to elect not to participate in the Settlement.  (*Id.*)

### IV.    Service of the Notice Packets and Responses Received

On March 5, 2015, the Court ordered the Settlement Administrator, Phoenix Settlement Administrators ("PSA"), to mail the Class Notice to Class Members no later than March 23, 2015. (Doc. 46 at 17.)  According to Melissa Meade, the Director of Operations at PSA, the Class Notices were mailed via the United States Postal Service to the 595 Class Members identified by Defendant on March 20, 2015.  (Doc. 49-3, Meade Decl. ¶¶ 1, 7.)

The United States Postal Service returned three Class Notice Packets as "undeliverable."  (Doc. 49-3 at 3, Meade Decl. ¶ 8.)  PSA located current addresses for these class members, and re-mailed the Notices.  (*Id.*)  None of these three Class Notices were again returned.  (*Id.*)  According to Ms. Meade, six inquiries were made regarding the class definitions and workweek calculations, to which PSA responded "based upon information provided by Defendant's counsel and reviewed by Plaintiff's counsel."  (*Id.*, ¶ 9(C)).  In addition, Michael Parra contacted both PSA and the Court regarding the calculation of his part of the share.  (*Id.*; *see also* Doc. 51.)  Ms. Meade reports that for the 594 Class Members, "the highest individual settlement payment is estimated to be **$8,927.66** and the average individual settlement payment is estimated to be **$3,068.18**."  (Doc. 49-3 at 4, Meade Decl. ¶12.)

### V.    The Cy Pres Beneficiary

Since many class action settlements result in unclaimed funds, parties should have a plan for distributing unclaimed funds. *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1305 (9th Cir. 1990).  The options for such distribution include cy pres distribution, escheat to the government, and reversion to the defendants.  *Id.*, 904 F.2d at 1307.  Here, the parties propose that

1   Greater Bakersfield Legal Assistance be the designated cy pres recipient.  (Doc. 43-1 at 20, Settlement

2   § 4.2.9; *see also* Doc. 49 at 21-22)

3       The Ninth Circuit has determined any proposed cy pres recipient should be "tethered to the

4   nature of the lawsuit and the interest of the silent class members." *Nachshin v. AOL, LLC*, 663 F.3d

5   1034, 1039 (9th Cir. 2011).  In other words, the Ninth Circuit "require[s] that there be a driving nexus

6   between the plaintiff class and the cy pres beneficiaries." *Dennis v. Kellogg Co.*, 697 F.3d 858, 865

7   (9th Cir. 2012) (citing *Nachshin*, 663 F.3d at 1038).  Without such tethering, the distribution of funds

8   "may create the appearance of impropriety" by catering "to the whims and self interests of the parties,

9   their counsel, or the court." *Nachshin*, 663 F.3d at 1038.  Thus, a cy pres award should not benefit a

10  group that is "too remote from the plaintiff class." *Six Mexican Workers*, 904 F.2d at 1308.

11      In identifying a cy pres beneficiary, the Ninth Circuit directs courts to consider whether awards

12  to the beneficiary "(1) address the objectives of the underlying statutes, (2) target the plaintiff class, or

13  (3) provide reasonable certainty that any member will be benefitted." *Nachshin*, 663 F.3d at 1040.

14  Further, the Court must consider whether the cy pres distribution is appropriate given the "size and

15  geographic diversity" of the class members.  *Id.* at 1040-41 (citing, *e.g., In re Airline Ticket Comm'n*

16  *Antitrust Litig.*, 307 F.3d 679, 683 (8th Cir. 2002); *Houck on Behalf of U.S. v. Folding Carton Admin.*

17  *Comm.*, 881 F.2d 494, 502 (7th Cir. 1989)).

18      Here, Plaintiff asserts the Greater Bakersfield Legal Assistance ("GBLA") is an appropriate cy

19  pres beneficiary because "the vast majority of the Class Members live in Kern County and the mission

20  statement of the GBLA is to serve this specific geographic area."  (Doc. 49 at 22, citing Dychter Decl.

21  ¶31.)  In addition, Plaintiff notes that "many Class Members do not earn enough money to pay for

22  private legal counsel to assist them with many of the basic areas of law that the GBLA provides

23  counsel on at no cost." (*Id.*)  Further, "GBLA provides free legal clinics in Kern County that focus on

24  common areas of law that most people will likely utilize in their lives, such as: (i) health issues; (ii)

25  consumer law; (iii) domestic violence; (iv) guardianship; (v) housing; and various other self-help

26  functions." (*Id.*)  Consequently, Plaintiff asserts that "it is highly likely that Class Members may

27  eventually utilize the free legal services provided by the GBLA." (*Id.*)

28      Notably, the Ninth Circuit has determined also that issues related to the identity of a cy pres

beneficiary are not generally ripe until there are funds that remain unclaimed.  *See Rodriguez v. West Publ'g Corp*., 563 F.3d 948, 966 (9th Cir. 2009) (finding cy pres distribution "becomes ripe only if entire settlement fund is not distributed to class members" and declining to determine propriety of cy pres at that time).  The Court explained that where a cy pres distribution is contingent on the outcome of the claims process for a cash distribution, issues regarding the identification of recipients "will not be ripe until it is determined that available cash remains in th[e] fund after the claims process has concluded." *Dennis v. Kellogg Co.,* 697 F.3d 858, 865 (9th Cir. 2012).

Nevertheless, given the location of the Class Members and the goal of the GBLA to serve only this geographic location, as well as the face that the GBLA provides free legal assistance in a wide-range of areas that may benefit the class member, the Court finds GBLA is an appropriate cy pres beneficiary, should one be needed.

## APPROVAL OF A CLASS SETTLEMENT

### I.     Legal Standard

When parties reach a settlement agreement prior to class certification, the Court has an obligation to "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement."  *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  Approval of a class settlement is generally a two-step process.  First, the Court must assess whether a class exists. *Id.* (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)).  Second, the Court must "determine whether the proposed settlement is fundamentally fair, adequate, and reasonable."  *Id.* (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 2998)).  The decision to approve or reject a settlement is within the Court's discretion.  *Hanlon*, 150 F.3d at 1026.

### II.     Certification of a Class for Settlement[3]

Class certification is governed by the Federal Rules of Civil Procedure, which provide that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all."  Fed. R. Civ. P. 23(a).  Under the terms of the Settlement, the proposed class is comprised of "all individuals who are or previously were employed by VIXR in the State of California as a Technician or Assistant

---

[3] Because the class was only conditionally certified upon preliminary approval of the Settlement, final certification of the Settlement Class is required.

Technician at any time since November 6, 2009 through January 21, 2015." (Doc. 43-1 at 12, Settlement § 1.10.)

Parties seeking class certification bear the burden of demonstrating the elements of Rule 23(a) are satisfied, and "must affirmatively demonstrate . . . compliance with the Rule." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011); *Doninger v. Pacific Northwest Bell, Inc.*, 563 F.2d 1304, 1308 (9th Cir. 1977). If an action meets the prerequisites of Rule 23(a), the Court must consider whether the class is maintainable under one or more of the three alternatives set forth in Rule 23(b). *Narouz v. Charter Communs., LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010). Here, Plaintiff argues "all requirements of Rule 23 are satisfied with respect to the proposed Settlement Class." (Doc. 43 at 16).

### A.   Rule 23(a) Requirements

The prerequisites of Rule 23(a) "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *General Telephone Co. of the Southwest. v. Falcon*, 457 U.S. 147, 155-56 (1982) (citing *General Telephone Co. v. EEOC*, 446 U.S. 318, 330 (1980)). Rule 23(a) requires:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

*Id.* These prerequisites are generally referred to as numerosity, commonality, typicality, and adequacy of representation. *Falcon*, 457 U.S. at 156.

### 1.   Numerosity

A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). This requires the Court to consider "specific facts of each case and imposes no absolute limitations." *EEOC*, 446 U.S. at 330. Although there is no specific numerical threshold, joining more than one hundred plaintiffs is impracticable. *See Jordan v. county of Los Angeles*, 669 F.2d 1311, 1319 & n.10 (9th Cir. 1982) (finding the numerosity requirement was "satisfied solely on the basis of the number of ascertained class members" and listing thirteen cases in which courts certified classes with fewer than 100 members), *vacated on other grounds*, 469 U.S. 810 (1982). Here, the Settlement Class includes 595 individuals. (Doc. 49 at 6.) Therefore, the numerosity requirement is satisfied.

///

2.     Commonality

Rule 23(a) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality "does not mean merely that [class members] have all suffered a violation of the same pro-vision of law," but "claims must depend upon a common contention." *Wal-Mart Stores*, 131 S. Ct. at 2551.  Previously, Plaintiff asserted, "there are several questions of fact or law common to all members of the Settlement Class that may be answered on a class-wide basis," including:

> (1) did VIXR fail to pay all minimum wages for all hours worked?; (2) did VIXR fail to pay overtime wages for all overtime hours worked?; (3) did VIXR fail to provide duty-free 30-minute meal periods on all shifts greater than five hours in length?; (4) did VIXR fail to provide accurate itemized wage statements?; (5) did VIXR fail to pay all wages owed upon termination of employment?; and, (6) was VIXR's failure to pay all owed wages to terminated employees "willful" as required for imposition of penalty wages under California Labor Code Section 203?

(Doc. 43 at 14, citing Dychter Decl. ¶ 10.)  Based upon the agreement of the parties, the Court finds the commonality requirement is satisfied for purposes of settlement.

3.     Typicality

The typicality requirement demands that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  A claim or defense is not required to be identical, but rather "reasonably co-extensive" with those of the absent class members. *Hanlon*, 150 F.3d at 1020.  "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks and citation omitted); *see also Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1463 (9th Cir. 1995) (typicality is satisfied when named plaintiffs have the same claims as other members of the class and are not subject to unique defenses).

Here, all class members were subject to the same policies and practices.  (*See* Doc. 43 at 14-15.) Plaintiff asserts the conduct was "not unique to Plaintiff but was an alleged practice common to all class members -- the alleged failure to pay all wages owed is based upon the exclusion of certain work activities (i.e. certain preparatory activities; driving time within the Kern County; certain concluding activities; mandatory meeting attendance) from hours worked, and the failure to receive duty-free meal breaks is based on the scheduling of employees and the nature of work in relation to required work

1  duties."  (*Id.*)  Because Plaintiff and Class Members have the same injuries, the typicality requirement

2  is satisfied.

3                  4.     Fair and Adequate Representation

4       Absentee class members must be adequately represented for judgment to have a binding effect.

5  *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940).  Accordingly, representative parties must "fairly and

6  adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "[R]esolution of this issue

7  requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any

8  conflicts of interest with other class members and (b) will the named plaintiffs and their counsel

9  prosecute the action vigorously on behalf of the class?"  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d

10  454, 462 (9th Cir. 2000) (citing *Hanlon*, 150 F.3d at 1020).

11                 *a.*     *Class counsel*

12       As the Court noted previously, Alexander Dychter and Walter Haines are experienced in

13  litigating wage and hour class action cases and in serving as class counsel.  (*See* Doc. 46 at 8, citing

14  Doc. 43 at 2.)  There are no known personal affiliations or familial relationships between the plaintiff

15  and proposed class counsel.  Accordingly, it appears Class Counsel satisfy the adequacy requirement.

16  Further, the interest of the named Plaintiffs is aligned with those of the class—to maximize their

17  recovery.  In addition, Defendant does not question the adequacy of counsel.  Therefore, the Court finds

18  Mr. Dychter and Mr. Haines satisfy the adequacy requirements.

19                 *b.*     *Class representatives*

20       Plaintiff seeks appointment as the class representative of the Settlement Class, and there are no

21  known conflicts with the interests of other Class Members.  Rather, the interest of the named Plaintiff is

22  aligned with those of the class—to maximize recovery.  Thus, it appears Plaintiff will fairly and

23  adequately represent the interests of the class.

24      **B.**    **Certification of a Class under Rule 23(b)**

25       As noted above, once the requirements of Rule 23(a) are satisfied, a class may only be certified

26  if it is maintainable under Rule 23(b).  Fed. R. Civ. P. 23(b); *see also Narouz*, 591 F.3d at 1266.

27  Plaintiff asserts that for Settlement purposes, class certification is appropriate under Rule 23(b)(3),

28  which requires a finding that (1) "the questions of law or fact common to class members predominate

over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  These requirements are generally called the "predominance" and "superiority" requirements.  *See Hanlon*, 150 F.3d at 1022-23; *see also Wal-mart Stores*, 131 S. Ct. at 2559 ("(b)(3) requires the judge to make findings about predominance and superiority before allowing the class").

### 1.    Predominance

The predominance inquiry focuses on "the relationship between the common and individual issues" and "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Hanlon*, 150 F.3d at 1022 (citing *Amchem Prods.*, 521 U.S. at 623).  The Ninth Circuit explained, "[A] central concern of the Rule 23(b)(3) predominance test is whether 'adjudication of common issues will help achieve judicial economy.'"  *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009) (quoting *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001)).  In this case, Plaintiff argued the predominance requirement is satisfied because "all the liability issues in this case can be determined based on common evidence" (Doc. 43 at 16), and Defendant does not disagree.

### 2.    Superiority

The superiority inquiry requires a determination of "whether objectives of the particular class action procedure will be achieved in the particular case."  *Hanlon*, 150 F.3d at 1023 (citation omitted). This tests whether "class litigation of common issues will reduce litigation costs and promote greater efficiency."  *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).  Pursuant to Rule 23(b)(3), the Court must consider four non-exclusive factors to determine whether a class is a superior method of adjudication, including (1) the class members' interest in individual litigation, (2) other pending litigation, (3) the desirability of concentrating the litigation in one forum, and (4) difficulties with the management of the class action.

#### a.    *Class members' interest in individual litigation*

This factor is relevant when class members have suffered sizeable damages or have an emotional stake in the litigation. *See In re N. Dist. of Cal., Dalkon Shield, Etc.*, 693 F.2d 847, 856 (9th Cir. 1982)).  Here, the average monetary damages each class member will receive is "estimated to be

$3,068.18." (Doc. 49-3 at 4, Meade Decl. ¶12, emphasis omitted.) Notably, the Settlement Administrator received only one request to be excluded from the litigation. (Doc. 49 at 10; Doc. 49-3 at 3, Meade Decl. ¶ 9(A)) Because there is no evidence that Class Members are interested in pursuing their own actions, this factor weighs in favor of class certification.

### b.    Other pending litigation

The parties have not identified any other pending litigation. As a result, this factor weighs in favor of certification.

### c.    Desirability of concentrating litigation in one forum

Because common issues predominate on Plaintiff's class claims, "presentation of the evidence in one consolidated action will reduce unnecessarily duplicative litigation and promote judicial economy." *Galvan v. KDI Distrib.*, 2011 U.S. Dist. LEXIS 127602, at *37 (C.D. Cal. Oct. 25, 2011). Moreover, because the parties have resolved the claims through the Settlement, this factor does not weigh against class certification.

### d.    Difficulties in managing a class action

The Supreme Court explained that, in general, this factor "encompasses the whole range of practical problems that may render the class format inappropriate for a particular suit." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 164 (1974). However, because the parties have reached a settlement agreement, it does not appear there are any problems with managing the action. Therefore, this factor weighs in favor of class certification.

Because the factors set forth in Rule 23(b) weigh in favor of certification, the Settlement Class is maintainable under Rule 23(b)(3). Accordingly, Plaintiff's request to certify the Settlement Class is **GRANTED.**

## III.    Approval of the Settlement

Settlement of a class action requires approval of the Court, which may be granted "only after a hearing and on finding that [the settlement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Approval is required to ensure the settlement is consistent with Plaintiffs' fiduciary obligations to the class. *See Ficalora v. Lockheed Cal. Co.*, 751 F.2d 995, 996 (9th Cir. 1985). The Ninth Circuit identified several of factors to evaluate whether a settlement meets these standards, including:

the strength of plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant;[4] and the reaction of the class members to the proposed settlement.

*Staton*, 327 F.3d at 959 (citation omitted).  Further, a court should consider whether settlement is "the product of collusion among the negotiating parties."  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 458 (citing *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1290 (9th Cir. 1992)).  In reviewing settlement terms, "[t]he court need not reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute."  *Class Plaintiffs*, 955 F.2d at 1291(internal quotations and citation omitted).

### A.     Strength of Plaintiffs' Case

When evaluating the strength of a case, the Court should "evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements."  *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 975 (E.D. Cal. 2012) (quoting *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F.Supp 1379, 1388 (D. Az. 1989))

In this action, there are several disputed claims the fact-finder would be required to determine. For example, Plaintiff reports that while he raised an "owed wages claim and meal period claim, VIXR did in fact maintain time records showing time worked, time billed to customers, and meal periods being taken.  (Doc. 49 at 8, citing Dychter Decl. ¶8.)  In addition, Plaintiff reports that "[t]here were also inherent problems with proof of damages, as VIXR argued the class members maintained varying job duties at different physical locations and no two day's [sic] were identical in nature." (*Id.*) Because the parties have conducted thorough investigations and discovery allowing them to assess the strengths and weaknesses of the case, this factor weighs in favor of preliminary approval of the Settlement.

### B.     Risk, Expense, Complexity, and Likely Duration of Further Litigation

Approval of settlement is "preferable to lengthy and expensive litigation with uncertain results."  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004).  If

---

[4] This factor does not weigh in the Court's analysis because the government is not a party in this action.  However, the Settlement provides a payment of $7,500 to the California Labor and Workforce Development Agency because the PAGA claim authorizes Plaintiff to act as a "private attorney general" on behalf of the State.

1   the settlement were to be rejected, the parties would have to engage in further litigation, including re-

2   certification of a class and discovery on the issue of damages.  Plaintiff asserted

3       Plaintiff faced a significant risk that he would not prevail on a contested motion for class
        certification. [Citation.] Plaintiff likewise faced a significant risk that he would not
4       prevail on the merits of any of his claims at trial. [Citation.] VIXR asserted defenses to
        all of Plaintiff's claims. With respect to Plaintiff's claims for unpaid minimum and
5       overtime wages, VIXR maintained that (i) class members were provided with sufficient
        time on-the-clock to perform the allegedly "off-the-clock" activities alleged in the
6       complaint, (ii) that class members were in fact over-paid for the work class members
        actually performed based on the company's policies to pay employees for time billed to
7       the customer and not the time actually worked by the employee, and (iii) class members
        were never restricted from reporting to VIXR that they were performing work that was
8       not being paid. [Citation.] With respect to Plaintiff's claims for meal breaks, VIXR
        maintained that the class members had varying job duties and work environments and
9       VIXR had absolutely no reason to know or believe that non-exempt employees were
        failing to receive their meal breaks. Additionally, VIXR maintained that its policies
10      were lawful under California law, that it provided meal periods, and that employees
        recorded their meal break times evidencing meal breaks being taken on submitted time
11      cards. [Citation.]Thus, in the absence of settlement, there were possible litigation
        outcomes where class members would have recovered absolutely nothing.

12

13  (Doc. 43 at 20, citations omitted.)  On the other hand, the settlement provides for the immediate

14  recovery for the class, with the average payment estimated to be $3,068.18, and the highest amount

15  estimated to be $8,927.66 . (Doc. 49-3 at 4, Meade Decl. ¶12.)  Given the risks and uncertainties faced

16  by Plaintiff, this factor weighs in favor of approval of the Settlement.

17      **C.    Maintenance of Class Status throughout the Trial**

18      Plaintiff acknowledges that he "faced the substantial risk of an adverse result on his contested

19  motion for class certification, which would have resulted in class members getting absolutely nothing."

20  (Doc. 49 at 9.)  Thus, this factor supports final approval of the Settlement.

21      **D.    Amount offered in Settlement**

22      The Ninth Circuit observed that "the very essence of a settlement is compromise, 'a yielding of

23  absolutes and an abandoning of highest hopes.'"  *Officers for Justice v. Civil Serv. Commission*, 688

24  F.2d 615, 624 (9th Cir. 1982) (citation omitted).  Thus, when analyzing the amount offered in

25  settlement, the Court should examine "the complete package taken as a whole," and the amount is "not

26  to be judged against a hypothetical or speculative measure of what might have been achieved by the

27  negotiators."  *Id.* at 625, 628.

28      In this case, the proposed gross settlement amount is $2,500,000.  (Doc. 43-1 at 12, Settlement

§ 1.17.)  Plaintiff reports that "[t]he Settlement reflects recovery by Plaintiff equals to approximately 35% of the estimated value of his claims for unpaid wages and meal period premium payments.  (Doc. 49 at 9, citing Dychter Decl. ¶ 9.)  Notably, however, "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1242 (9th Cir. 1998).  Rather, as noted by the Ninth Circuit, "parties, counsel, mediators, and district judges naturally arrive at a reasonable range for settlement by considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to present value." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).  Based upon the parties' agreement that this amount provides adequate compensation for class members, the Court finds the amount offered supports approval of the class settlement.

### E.    Extent of Discovery Completed and Stage of the Proceedings

The Court is "more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." *Adoma*, 913 F. Supp. 2d at 977 (quoting *DIRECTV, Inc.*, 221 F.R.D. at 528).  Here, Plaintiff reports that "substantial amount of discovery was conducted prior to the parties attending mediation." (Doc. 49 at 9.)  According to Plaintiff:

> Defendant produced a substantial amount of documents/data, including but not limited to, time-punch data, wage statement data, a sampling of putative class member contact information, and other relevant information enabling Plaintiff to evaluate the strengths and weaknesses of his claims. [Citation.] Prior to mediation Plaintiff took a Person Most Knowledgeable Deposition of VIXR and Defendant took the Deposition of Mr. Morgret. [Citation.] Moreover, prior to mediation, Plaintiff retained the services of a statistician to assist in the analysis of voluminous amount of electronic data in order for Plaintiff to calculate the maximum amount of Defendant's potential liability. [Citation.] Pursuant to a negotiated pre-mediation process, the parties selected a random sample of employees from the class, and defendant provided a volume of work and payroll records, including time records and GPS data, covering the class period. [Citation.] Both sides performed a detailed analysis of hours billed, hours worked, hours paid and other relevant issues. [Citation.] This data formed much of the basis for the settlement negotiations. [Citation.]

(Doc. 49 at 9-10, citing Dychter Decl. ¶ 10.)  Thus, it appears that the parties made informed decisions, which lead to resolution of the matter with the assistance of a mediator.  As a result, the settlement agreement "is presumed fair." *See Adoma*, 913 F. Supp.2d at 977.  Consequently, this factor supports final approval of the Settlement.

### F.        Experience and Views of Counsel

As addressed above, Class Counsel are experienced in class action litigation.  The Class Counsel believe "the Settlement is fair and reasonable, and that final approval of the Settlement would best serve the interests of class members because the extremely favorable result achieved by the Settlement outweighs the risks and uncertainty of continued litigation."  (Doc. 49 at 10.)  The recommendation that the Settlement be approved is entitled to significant weight and supports approval of the agreement.  *See Nat'l Rural Telecomms.*, 221 F.R.D. at 528 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation").

### G.        Reaction of Class Members to Settlement

Significantly, no objections to the terms of the Settlement were filed by Class Members following service of the Class Notice.  While one person, Mr. Parra, filed an objection to the calculation of his share of the settlement amount (Doc. 51), it appears this issue has been resolved with him (Doc. 53) and, despite the Court holding and hearing on the final approval, Mr. Parra did not appear to address his claims.

On the other hand, Plaintiff agreed to the terms of the Settlement, and did not have any objections to the terms.  "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members."  *Nat'l Rural Telecomms.*, 221 F.R.D. at 529.  Therefore, this factor weighs in favor of approving the Settlement.

### H.        Collusion between Negotiating Parties

The inquiry of collusion addresses the possibility that the settlement agreement is the result of either "overt misconduct by the negotiators" or improper incentives of class members at the expense of others.  *Staton*, 327 F.3d at 960. The parties utilized an impartial mediator, and settlement negotiations took several weeks to complete.  (*See* Doc. 35 at 11-12; Doc. 43 at 25.)  Given the duration of the negotiations, it appears the agreement is the product of non-collusive conduct.

### IV.     Conclusion

The factors set forth by the Ninth Circuit weigh in favor of final approval of the Settlement,

which appears to be is fair, reasonable, and adequate as required by Rule 23.  Therefore, Plaintiff's

motion final approval of the Settlement Agreement is **GRANTED**.

<u>**REQUEST FOR ATTORNEYS' FEES AND COSTS**</u>

Attorneys' fees and nontaxable costs "authorized by law or by agreement of the parties" may be

awarded pursuant to Rule 23(h).  The Settlement authorizes Class Counsel to seek attorneys' fees "in

amount equal to twenty-five percent (25%) of the Class Settlement Amount," for a total award of

$625,000.00. (Doc. 43-1 at 18, Settlement § 4.2.2.)

Under the "common fund" doctrine, attorneys who create a common fund for a class may be

awarded their fees and costs from the fund.  *Hanlon*, 150 F.3d at 1029; *Boeing Co. v. Van Gemert*, 444

U.S. 472, 478 (1980) ("a lawyer who recovers a common fund for the benefit of persons other than

himself or his client is entitled to a reasonable attorney's fee from the fund as a whole").  An award

from the common fund "rests on the perception that persons who obtain the benefit of a lawsuit without

contributing to its cost are unjustly enriched at the successful litigant's expense," and as such

application of the doctrine is appropriate "when each member of a certified class has an undisputed and

mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf."  *Boeing

Co.*, 444 U.S. at 478.  Here, the Settlement applies distribution formulas to determine the amount paid

to class members who submitted a valid claim, and application of the common fund doctrine is

appropriate.

**I.      Legal Standards**

"[A] district court must carefully assess the reasonableness of a fee amount spelled out in a class

action settlement agreement" to determine whether it is "'fundamentally fair, adequate, and reasonable'

Fed.R.Civ.P. 23(e)."  *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003)).  To do so, the Court

must "carefully assess the reasonableness of a fee amount spelled out in a class action settlement

agreement." *Id*.

A court "may not uncritically accept a fee request," but must review the time billed and assess

whether it is reasonable in light of the work performed and the context of the case.  *See Common Cause

v. Jones*, 235 F. Supp. 2d 1076, 1079 (C.D. Cal. 2002); *see also McGrath v. County of Nevada*, 67 F.3d

248, 254 n.5 (9th Cir. 1995) (noting a court may not adopt representations regarding the reasonableness

17

of time expended without independently reviewing the record); *Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378, 1385 (9th Cir. 1984) (remanding an action for a thorough inquiry on the fee request where "the district court engaged in the 'regrettable practice' of adopting the findings drafted by the prevailing party wholesale" and explaining a court should not "accept[] uncritically [the] representations concerning the time expended").

The party seeking fees bears the burden of establishing that the fees and costs were reasonably necessary to achieve the results obtained. *See Fischer v. SJB-P.D., Inc.*, 214 F.3d 1115, 1119 (9th 2000). Therefore, a fee applicant must provide time records documenting the tasks completed and the amount of time spent. *Hensley v. Eckerhart*, 461 U.S. 424, 424 (1983); *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 945-46 (9th Cir. 2007). "Where the documentation of hours in inadequate, the district court may reduce hours accordingly." *Hensley*, 461 U.S. at 433.

Significantly, when fees are to be paid from a common fund, as here, the relationship between the class members and class counsel "turns adversarial." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994). The Ninth Circuit observed:

> [A]t the fee-setting stage, plaintiff's counsel, otherwise a fiduciary for the class, has become a claimant against the fund created for the benefit of the class. It is obligatory, therefore, for the trial judge to act with a jealous regard to the rights of those who are interested in the fund in determining what a proper fee award is.

*Id.* at 1302 (internal quotation marks, citation omitted). As a result the district court must assume a fiduciary role for the class members in evaluating a request for an award of attorney fees from the common fund. *Id.*; *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 968 (9th Cir. 2009) ("when fees are to come out of the settlement fund, the district court has a fiduciary role for the class").

The Ninth Circuit determined both a lodestar and percentage of the common fund calculation "have [a] place in determining what would be reasonable compensation for creating a common fund." *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989). Whether the Court applies the lodestar or percentage method, the Ninth Circuit requires "fee awards in common fund cases be reasonable under the circumstances." *Florida v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990); *see also Staton*, 327 F.3d at 964 (fees must be "fundamentally fair, adequate, and reasonable").

///

### A.      Lodestar Method

The lodestar method calculates attorney fees by "by multiplying the number of hours reasonably expended by counsel on the particular matter times a reasonable hourly rate."  *Florida* , 915 F.2d at 545 n. 3 (citing *Hensley*, 461 U.S. at 433).  The product of this computation, the "lodestar" amount, yields a presumptively reasonable fee.  *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008).  Next, the court may adjust the lodestar upward or downward using a "multiplier" considering the following factors adopted by the Ninth Circuit in a determination of the reasonable fees:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).  However, the Court has since determined that the fixed or continent nature of a fee and the "desirability" of a case are no longer relevant factors.  *Resurrection Bay Conservation Alliance v. City of Seward*, 640 F.3d 1087, 1095, n.5 (9th Cir. 2011) (citing *Davis v. City of San Francisco*, 976 F.2d 1536, 1546 n.4 (9th Cir. 1992)).

### B.      Percentage from the common fund

As the name suggests, under this method, "the court makes a fee award on the basis of some percentage of the common fund."  *Florida*, 915 F.2d at 545 n. 3.  In the Ninth Circuit, the typical range of acceptable attorneys' fees is 20% to 30% of the total settlement value, with 25% considered the benchmark.  *See, Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1047 (9th Cir. 2002); *Hanlon*, 150 F.3d at 1029 (observing "[t]his circuit has established 25 % of the common fund as a benchmark award for attorney fees").  The percentage may be adjusted below or above the benchmark, but the Court's reasons for adjustment must be clear.  *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).

When assessing whether the percentage requested is reasonable, courts may consider a number of factors, including "the extent to which class counsel achieved exceptional results for the class,

whether the case was risky for class counsel, whether counsel's performance generated benefits beyond the cash settlement fund, the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis." *In re Online DVD-Rental Antitrust Litigation*, 779 F.3d 934, 954-55 (9th Cir. 2015) (internal quotation marks omitted)

## II.     Evaluation of the fees requested

"The district court has discretion to use the lodestar method or the percentage of the fund method in common fund cases." *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) (quoting *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 109 F.3d 602, 607 (9th Cir. 1997)). Notably, the Court must consider similar factors under either method. *See Kerr*, 526 F.2d at 70; *In re Online DVD-Rental Antitrust Litigation,* 779 F.3d at 954-55. Further, the Court may "appl[y] the lodestar method as a crosscheck" to determine whether the percentage requested is reasonable. *Vizcaino*, 290 F.3d at 1050, n.5.

### A.     Time and labor required

Class Counsel provided a list of each attorney who worked on this action, the number of hours, and the rate billed by each through the date of filing their motion for an award of fees. (*See* Doc. 49-1, Dychter Decl; Doc. 49-2, Haines Decl.) Mr. Dychter reports he worked 371 hours on this action, while Mr. Haines reports he worked 49.5 hours. (Dychter Decl. ¶ 21; Haines Decl. ¶ 8.) Further, Class Counsel report they anticipate further work on the action related to attending the final approval and fairness hearing, "responding to class member inquiries and requests for clarification from the Administrator." (Dychter Decl. ¶ 21.)

In addition, Class Counsel argue that they "had to forego compensable hourly work and other contingent cases to devote the necessary time and resources to this contingent case." (Doc. 49 at 13.) However, that the total number hours expended by counsel from the time this action was initiated in 2013 to date was only 420.50 hours. Thus, the Court is not persuaded that they sacrificed a significant amount of work. Nevertheless, the time expended by Class Counsel supports an award equal to the Ninth Circuit benchmark.

///

20

### B.     Results obtained for the class

Courts have recognized consistently that the result achieved is a major factor to be considered in making a fee award.  *Hensley*, 461 U.S. at 436; *Wilcox v. City of Reno*, 42 F.3d 550, 554 (9th Cir. 1994).  Here, Plaintiff reports that "the average individual settlement payment is estimated to be $3,068.18," and "the highest individual settlement payment is estimated to be $8,927.66."  (Doc. 49-3 at 4, Meade Decl. ¶12.)  Further, the gross settlement fund is equal to 35% of the estimated value of Plaintiff's claims.  (Doc. 49 at 9, citing Dychter Decl. ¶ 9.)  This is an acceptable result which supports an award of the fees requested.

### C.     Risk undertaken by counsel

The risk of costly litigation and trial is an important factor in determining the fee award.  *Chemical Bank v. City of Seattle*, 19 F.3d 1297, 1299-1301 (9th Cir. 1994).  The Supreme Court explained, "the risk of loss in a particular case is a product of two factors: (1) the legal and factual merits of the claim, and (2) the difficulty of establishing those merits."  *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992).  Here, as discussed above, Plaintiff asserts there was a "significant risk that he would not prevail on a contested motion for class certification," and that Plaintiff "would not prevail on the merits of any of his claims at trial" in light of the evidence produced by VIXR.  (Doc. 43 at 20.)  Based upon these facts, the Court finds the risks faced by Class Counsel support award of the 25% benchmark is appropriate.

### D.     Complexity of issues and skill required

The complexity of issues and skills required may weigh in favor of a departure from the benchmark fee award.  *See, e.g., Lopez v. Youngblood*, 2011 U.S. Dist. LEXIS 99289, at *14-15 (E.D. Cal. Sept. 2, 2011) (in determining whether to award the requested fees totaling 28% of the class fund, the Court observed the case involved "complex issues of constitutional law in an area where considerable deference is given to jail officials," and the action "encompassed two categories of class members"); *see also In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, at *66 (C.D. Cal. June 10, 2005) ("Courts have recognized that the novelty, difficulty and complexity of the issues involved are significant factors in determining a fee award").

Here, Class Counsel do not argue the matter required exceptional skills, or that the issues

presented were very complex.  Rather, they argue simply that they "displayed skills consistent with those that might be expected of attorneys of comparable experience.  (Doc. 49 at 13.)  Consequently, the skill required and lack of complexity supports the requested fee award.

### E.    Length of professional relationship

Here, Class Counsel initiated this action on behalf of Plaintiff in November 2013, and the matter was resolved following mediation in January 2015.  The short duration of the professional relationship may warrant an award below the benchmark.  *See Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (finding "the 25 percent standard award" was appropriate although "the litigation lasted more than 13 years").

### F.    Awards in similar cases

Class Counsel report that "[t]he attorneys' fees requested by Class Counsel are within the range of fees awarded in comparable cases." (Doc. 49 at 17.)  Class Counsel observe, "A review of class action settlements over the past 10 years shows that the courts have historically awarded fees in the range of 20% to 50%, depending upon the circumstances of the case. (*Id.*, citing *In re Warner Communications Sec. Lit.*, 618 F.Supp. 735, 749-50 (S.D. N.Y. 1985)).  Notably, as discussed above, 25% of a common fund is "benchmark award for attorney fees" in the Ninth Circuit.  *Hanlon*, 150 F.3d at 1029; *see also Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 448 (E.D. Cal. 2013) ("[t]he typical range of acceptable attorneys' fees in the Ninth Circuit is 20 percent to 33.3 percent of the total settlement value").  Given that the fees requested are equal to the benchmark, the awards in similar cases support the requested fee award.

### G.    Lodestar Crosscheck and Market Rate

In general, the first step in determining the lodestar is to determine whether the number of hours expended was reasonable.  *Fischer*, 214 F.3d at 1119.  However, when the lodestar is used as a cross-check for a fee award, the Court is not required to perform an "exhaustive cataloguing and review of counsel's hours."  *See Schiller*, 2012 WL 2117001 at *20 (citing *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306 (3d Cir.2005); *In re Immune Response Sec. Litig.*, 497 F.Supp.2d 1166 (S.D.Cal. 2007)).  Assuming the hours reported are reasonable, the Class Counsel reports the resulting lodestar totals $204,050 for Mr. Dychter and $32,175 for Mr. Haines.  (Doc. 49-1 at 6, ¶ 21; Doc. 49-2 at 3, ¶¶ 7-9.)

Thus, the fees requested are 2.65 times the lodestar calculated by Class Counsel.  (Doc. 49 at 18.)

Significantly, however, the hourly fees used to calculate this amount must be reduced to reflect the market rate within this community.  The Supreme Court explained that attorney fees are to be calculated with "the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895-96 and n.11 (1984).  In general, the "relevant community" for purposes of determining the prevailing market rate is the "forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).  Thus, when a case is filed in the Fresno Division of the Eastern District of California, "[t]he Eastern District of California, Fresno Division, is the appropriate forum to establish the lodestar hourly rate . . ." *See Jadwin v. County of Kern*, 767 F.Supp.2d 1069, 1129 (E.D. Cal. 2011).

Mr. Dychter asserts that "his custom hourly rate" is $550, while Mr. Haines' hourly rate is $650.  (Doc. 49-1 at 6, ¶ 21; Doc. 49-2 at 3. ¶ 7.)  The Court has reviewed rates in fee awards in the Fresno Division of the District and concluded that "hourly rates generally accepted in the Fresno Division for competent experienced attorneys is between $250 and $380, with the highest rates generally reserved for those attorneys who are regarded as competent and reputable and who possess in excess of 20 years of experience." *Silvester v. Harris*, 2014 WL 7239371 at *4, n.2 (E.D. Cal. Dec. 2014).  Thus, the hourly rates of Mr. Dychter and Mr. Haines exceed those generally awarded in the Fresno Division of the Eastern District of California.  With a rate adjustment to $380 per hour, the lodestar amount is reduced to a total of $159,790.   At this rate, the fees sought would be 4.22 times the lodestar.

**III.     Amount of Fees to be Awarded**

Significantly, there is a strong presumption that the lodestar is a reasonable fee.  *Gonzalez*, 729 F.3d at 1202; *Camacho*, 523 F.3d at 978.  As a result, "a multiplier may be used to adjust the lodestar amount upward or downward only in rare and exceptional cases, supported by both specific evidence on the record and detailed findings . . . that the lodestar amount is unreasonably low or unreasonably high." *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000 (internal punctuation and citations omitted).  Nevertheless, the Ninth Circuit observed that the lodestar is "routinely enhanced . . . to reflect the risk of non-payment in common fund cases." *In re Washington*

1    *Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d at 1300.

2            Here, the requested fees of $625,000.00 would result in a multiplier of approximately 3.9,

3    which is within the range typically awarded in the Ninth Circuit.  *See Vizcaino*, 290 F.3d at 1051

4    ("multiples ranging from one to four are frequently awarded in common fund cases when the lodestar

5    method is applied").  Thus, the adjusted lodestar supports a determination that the fees requested by

6    Class Counsel are fair.  Accordingly Class Counsel's request for attorney fees is **GRANTED** in the

7    modified amount of 25% of the Settlement fund, or $625,000.

8                                     **REQUESTS FOR COSTS**

9    **I.       Litigation Expenses**

10           Reimbursement of taxable costs is governed by 28 U.S.C. § 1920 and Federal Rule of Civil

11   Procedure 54.  Attorneys may recover reasonable expenses that would typically be billed to paying

12   clients in non-contingency matters.  *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994).  Here,

13   Plaintiff's counsel seeks a total reimbursement of $14,423.82 for costs incurred in the course of this

14   action.  (Doc. 49 at 19.)  Class Counsel asserts:

15           These costs primarily involve the following: filing and service fees (approx. $664); fees
             associated with retaining a mediator, the Hon. Edward Infante (Ret.) (approx. $6,775);
16           fees associated with retaining a statistician, Dr. James R. Lackritz, Ph.D. (approx. $3,270);
             fees associated with taking a PMK Deposition (approx. $1,182); travel related expenses
17           from San Diego to Los Angeles for the: (i) initial case meeting at the office of defense
             counsel; (ii) Rule 26(f) conference at the office of defense counsel; (iii) PMK Deposition
18           at the office of defense counsel; (iv) mediation at JAMS in Santa Monica, CA; and travel
             expenses from San Diego to Bakersfield for the (v) initial status conference, and (vi)
19           deposition of Plaintiff Morgret (approx. $2,225); and, also includes amounts paid for
             document copying/scanning fees, legal research charges, courier delivery charges, and
20           mailings all of which are costs normally billed to and paid by the client.

21   (Doc. 49 at 19, emphasis omitted) (citing Dychter Decl. ¶23; Haines Decl. ¶10)).  Previously, this Court

22   noted costs "including filing fees, mediator fees . . . , ground transportation, copy charges, computer

23   research, and database expert fees . . . are routinely reimbursed in these types of cases."  *Alvarado v.*

24   *Nederend*, 2011 WL 1883188 at *10 (E.D. Cal. Jan. May 17, 2011).  Accordingly, the request for

25   litigation costs in the amount of $14,423.82 is **GRANTED**.

26   **II.      Costs of Settlement Administration**

27           The Settlement authorizes the reimbursement of expenses up to $15,000 for the Settlement

28   Administrator.  (Doc. 43-1 at 19, Settlement § 4.2.5.)  Ms. Meade reports, "PSA's estimated costs

associated with the administration of this matter are $10,570.00." (Doc. 49-3 at 4, Meade Decl. ¶ 12.)

The administrative expenses requested are within the range of previous costs for claims administration awarded in this District. *See, e.g, Bond v. Ferguson Enterprises, Inc.*, 2011 WL 2648879, at *8 ($18,000 settlement administration fee awarded in wage an hour case involving approximately 550 class members); *Vasquez v. Coast Valley Roofing*, 266 F.R.D. 482, 483-84 (E.D. Cal. 2010) ($25,000 settlement administration fee awarded in wage and hour case involving approximately 170 potential class members).  Accordingly, the request for $10,570 in administration expenses for the settlement administration by PSA is **GRANTED**.

### PLAINTIFF'S REQUEST FOR AN INCENTIVE AWARD

The Settlement provides that Plaintiff may apply to the District Court for a class representative enhancement up to $10,000, to be paid from the gross settlement amount.  (Doc. 43-1 at 18, Settlement § 4.2.1.)

In the Ninth Circuit, a court has discretion to award a class representative a reasonable incentive payment.  *Staton*, 327 F.3d at 977; *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 463.  Incentive payments for class representatives are not to be given routinely.  In *Staton*, the Ninth Circuit observed,

> Indeed, '[i]f class representatives expect routinely to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard." *Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713, 720 (E.D.N.Y. 1989); *see also Women's Comm. for Equal Employment Opportunity v. Nat'l Broad. Co.*, 76 F.R.D. 173, 180 (S.D.N.Y. 1977) ("[W]hen representative plaintiffs make what amounts to a separate peace with defendants, grave problems of collusion are raised.").

*Id.* at 975.  In evaluating a request for an enhanced award to a class representative, the Court should consider all "relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonable fears of workplace retaliation."  *Id.* at 977.  Further, incentive awards may recognize a plaintiff's "willingness to act as a private attorney general."  *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009).

### A.    Actions taken to benefit the class

Plaintiff asserts that he "subjected himself to intrusive discovery (including being deposed for a full-day and missing work), the possibility of having to pay employer costs or attorney's fees, and the

25

threat of blacklisting for suing an employer in future employment endeavors. (Doc. 49 at 20, emphasis omitted).  In addition, Plaintiff asserts that "over the last 20 months [he] has communicated with counsel on countless occasions, assisted counsel with formal written discovery and investigation, and was available via telephone during mediation."  (*Id.*)  Notably, Plaintiff would have undertaken much of these same actions whether or not the action was brought on behalf of the class.  Nevertheless, undoubtedly, his actions benefitted the class such that they weigh in favor of an incentive payment.

### B.    Time expended by Plaintiff

Although Plaintiff reports the tasks undertaken in this action, he does not provide any estimate of the number of hours or the time expended.  Further, while Plaintiff was available to Class Counsel by phone throughout the course of the mediation (Doc. 49 at 20), making himself available by phone is significantly less burdensome than traveling to attend the mediation in person.  Therefore, this factor weighs only slightly in favor of an incentive payment to Plaintiffs.

### C.    Fears of workplace retaliation

Plaintiff does not contend he feared retaliation for their connections to this action, and Plaintiff is a *former* employee of Defendant such that retaliation is not possible.  Further, there is no support for Plaintiff's speculation that he could face "blacklisting" for the filing of this action.  Thus, this factor does not support incentive payments to Plaintiff.

### D.    Reasonableness of Plaintiff's request

Considering the actions taken by Plaintiff, an incentive award is appropriate.  In determining the amount to be awarded, the Court may consider the time expended by the class representative, the fairness of the hourly rate, and how large the incentive award is compared to the average award class members e49xpect to receive.  *See, e.g., Ontiveros v. Zamora*, 2014 WL 5035935 (E.D. Cal. Oct. 8, 2014) (evaluating the hourly rate the named plaintiff would receive to determine whether the incentive award was appropriate); *Rankin v. Am. Greetings, Inc.*, 2011 U.S. Dist. LEXIS 72250, at *5 (E.D. Cal. July 6, 2011) (noting the incentive award requested was "reasonably close to the average per class member amount to be received); *Alvarado*, 2011 WL 1883188 at *10-11 (considering the time and financial risk undertaken by the plaintiff).  Here, given the lack of information regarding the time expended by Plaintiff, the $10,000 award that Plaintiff requests is unsupported.

1              1.       Time expended

2          In *Alvarado*, the Court noted the class representatives "(1) travelled from Bakersfield to

3   Sacramento for mediation sessions (2) assisted Counsel in investigating and substantiating the claims

4   alleged in this action; (3) assisted in the preparation of the complaint in this action; (4) produced

5   evidentiary documents to Counsel; and (5) assisted in the settlement of this litigation." *Id.*, 2011 WL

6   1883188 at *11.  Further, the Court noted the plaintiffs "undertook the financial risk that, in the event

7   of a judgment in favor of Defendant in this action, they could have been personally responsible for the

8   costs awarded in favor of the Defendant." *Id.*  In light of these facts, the Court found an award of

9   $7,500 for each plaintiff was appropriate for the time, efforts, and risks undertaken.

10         Likewise, in *Bond*, the Court found incentive payments of $7,500 were appropriate for the two

11  named plaintiffs who: "(1) provided significant assistance to Class Counsel; (2) endured lengthy

12  interviews; (3) provided written declarations; (4) searched for and produced relevant documents; (5)

13  and prepared and evaluated the case for mediation, which was a full day session requiring very careful

14  consideration, evaluation and approval of the terms of the Settlement Agreement on behalf of the

15  Class." *Bond*, 2011 WL 2648879, at *15.  Similarly, the Northern District determined class

16  representatives failed to justify incentive awards of $10,000 although the plaintiffs reported "they were

17  involved with the case by interacting with counsel, participating in conferences, reviewing documents,

18  and attending the day-long mediation that resulted in the settlement." *Wade v. Minatta Transport Co.*,

19  2012 U.S. Dist. LEXIS 12057, at *3 (N.D. Cal. Feb. 1, 2012).

20         In this case, Plaintiff seeks an award that greater than the amount of the incentive awards

21  approved in *Alvarado* and *Bond*.  However, Plaintiff did not suffer the inconvenience of traveling to the

22  mediation.  Further, although Plaintiff assisted with the production of documents and reviewing

23  evidence produced by Defendant, it does not appear that Plaintiff was involved in any investigations

24  related to his claims.  Consequently, the award of $10,000 is excessive.

25              2.       Fairness of the hourly rate

26         Recently, this Court criticized a requested award of $20,000 where the plaintiff estimated "he

27  spent 271 hours on his duties as class representative over a period of six years," because the award

28  would have compensated the class representative "at a rate of $73.80 per hour." *Ontiveros*, 2014 WL

5035935 at *5-6. The Court explained that "[i]ncentive awards should be sufficient to compensate class representatives to make up for financial risk . . . for example, for time they could have spent at their jobs." *Id.* at *6 (citing *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009).  Here, Plaintiff did not provide any estimate of the number of hours expended in this action.  Consequently, the Court is unable to determine the fairness of the hourly rate and, therefore, may not properly crosscheck the amount sought.  This failure weighs in favor of denying an enhancement.

### 3.    Comparison of the award to those of the Class Members

*In Rankin*, the Court approved an incentive award of $5,000, where the "[p]laintiff retained counsel, assisted in the litigation, and was an active participant in the full-day mediation." *Id.*, 2011 U.S. Dist. LEXIS 72250, at *5.  The Court found the amount reasonable, in part because "the sum is reasonably close to the average per class member amount to be received." *Id.*

Here, Plaintiff asserts the award of $10,000 is reasonable, because it "is only about $1,000 more than many individual settlement amounts (e.g. 117 settlement class members will be receiving individual settlement awards of over $6,000; 69 settlement class members will be receiving individual settlement awards of over $7,000, and the highest individual settlement award is approximately $8,916)."  (Doc. 49 at 21, emphasis omitted.)  Consequently, this factor favors the requested incentive award.

### E.    Amount to be awarded

Given the lack of information related to the actions taken by Plaintiff, the Court is unable to find the requested award of $10,000 is appropriate.[5]  However, Plaintiff clearly expended efforts on behalf of the class and missed a day of work for his deposition.  In light of the fact that the average award expected to be received by the class members is $3,068, and the dearth of information related to the number of hours Plaintiff expended, the Court finds $5,000 is an appropriate incentive award.  Thus, Plaintiff's request for an incentive payment is **GRANTED** in the modified amount of $5,000.

///

---

[5] Significantly, in granting preliminary approval of Plaintiff's request for an amount up to $10,000, the Court observed that Plaintiff offered "no evidence related to the number of hours Plaintiff spent working with Class Counsel on this action, or even an estimate of the number of meetings Plaintiff had with Class Counsel."  (Doc. 46 at 13.)  Despite this criticism, Plaintiff failed to cure the defects of his request.

## CONCLUSION AND ORDER

Based upon the foregoing, **IT IS HEREBY ORDERED**:

1. The objection filed by Michael Joseph Parra (Doc. 51) is **OVERRULED**

2. Plaintiff's motion for final approval of the Settlement Agreement is **GRANTED**;

3. Plaintiffs' request for certification of the Settlement Class is **GRANTED** and defined as follows:

   > All individuals who are or previously were employed by VIXR in the State of California as a Technician or Assistant Technician at any time since November 6, 2009 through January 21, 2015.

4. Plaintiff's request for a class representative incentive payment is **GRANTED IN PART** in the amount of $5,000;

5. Class Counsel's motion for attorneys' fees is **GRANTED** in the amount of $625,000, which is 25% of the gross settlement amount;

6. Class Counsel's request for costs in the amount of $14,423.82 is **GRANTED**;

7. The request for fees for the Settlement Administrator PSA in the amount of $10,570 is **GRANTED**; and

8. The California Labor Code Private Attorney General Act payment to the State of California in the amount of $7,500 is **APPROVED**;

9. The action be dismissed with prejudice, with each side to bear its own costs and attorneys' fees except as otherwise provided by the Settlement and ordered by the Court; and

10. The Court retain jurisdiction to consider any further applications arising out of or in connection win the Settlement.

IT IS SO ORDERED.

Dated:   __May 29, 2015__                    _____ **/s/ Jennifer L. Thurston** _____
                                                            UNITED STATES MAGISTRATE JUDGE